PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MARC J. BLATSTEIN,
          *Defendant-Appellant.*

No. 06-4210

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

MARC J. BLATSTEIN,
          *Defendant-Appellee.*

No. 06-4285

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(3:05-cr-00216-RLW)

Argued: March 14, 2007

Decided: April 12, 2007

Before MICHAEL and KING, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge King wrote the opinion, in which Judge Michael and Senior Judge Hamilton concurred.

---

**COUNSEL**

**ARGUED:** David Glenn Barger, WILLIAMS MULLEN, McLean, Virginia, for Appellant/Cross-Appellee. Laura C. Marshall, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Michael R. Sklaire, WILLIAMS MULLEN, McLean, Virginia, for Appellant/Cross-Appellee. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee/Cross-Appellant.

---

**OPINION**

KING, Circuit Judge:

Marc J. Blatstein appeals the denial of his motion to suppress evidence discovered by federal agents conducting warrant searches of his office and residence in Fredericksburg, Virginia. After having his suppression motion denied, Blatstein was convicted in the Eastern District of Virginia of one count of mail fraud, in contravention of 18 U.S.C. § 1341. This conviction was predicated on Blatstein's conditional guilty plea, pursuant to which he reserved his right to appeal the court's adverse suppression ruling. Blatstein contends that the evidence underlying his conviction was obtained through the execution of constitutionally invalid search warrants. The Government, meanwhile, has cross-appealed Blatstein's sentence of 12 months and one day in prison. As explained below, we affirm the denial of Blatstein's suppression motion, but vacate his sentence and remand.

I.

Defendant Marc J. Blatstein was a licensed podiatrist who operated a solo podiatry practice in a Fredericksburg strip mall. In May 2004, federal law enforcement officials began to investigate Blatstein's practice, based on their suspicion that he was fraudulently billing his patients' health insurers. On July 14, 2004, in the course of this investigation, FBI Agent Jeffrey Howard sought warrants to search Blatstein's office and residence for records relating to his practice's billing and finances. Agent Howard submitted an affidavit to a United

States magistrate judge in support of his warrant applications (the "affidavit"). The affidavit asserted that there was probable cause to believe Blatstein had violated 18 U.S.C. §§ 1347 and 1341, which, respectively, prohibit health care fraud and mail fraud.

The affidavit explained the pertinent federal statutes as follows: Section 1347 of Title 18 makes it an offense for any person to knowingly and willfully execute, or attempt to execute, a scheme or artifice to (1) defraud any health care benefit program; or (2) obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program. A "health care benefit program," for purposes of § 1347, is "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual." 18 U.S.C. § 24(b). Section 1341 makes it an offense to use the United States mail to execute a scheme or artifice to defraud. 18 U.S.C. § 1341.

The affidavit of Agent Howard provided detailed information indicating that Blatstein had contravened §§ 1347 and 1341. According to the affidavit, Blatstein had billed his patients' insurers for the use of outpatient surgical facilities provided by an entity called the Central Park Ambulatory Surgical Center ("CPASC"), which had no physical existence and was not known to or licensed by the Commonwealth of Virginia. In this regard, the affidavit reported information obtained from two former employees of Blatstein, whom the affidavit designated Cooperating Witnesses 1 ("CW-1") and 2 ("CW-2"). CW-1 advised investigators that Blatstein billed surgical facility fees for procedures performed at his podiatry office, despite CW-1's repeated warnings to Blatstein that he could not legitimately charge such fees for procedures not performed at a physically separate facility. CW-1 also related that, although Blatstein's employees handled billing for other procedures, Blatstein insisted on personally completing the paperwork relating to his billing for surgical facilities. According to the affidavit, Blatstein did not disclose to CW-1 his practice of submitting bills that purported to be from CPASC. In fact, CW-1 first heard of CPASC not from Blatstein, but from someone who called a telephone line reserved for Blatstein's exclusive use and asked for the Central Park Ambulatory Surgery Center.

CW-2, the other former Blatstein employee relied on in Agent Howard's affidavit, informed investigators that Blatstein had rented a post office box at a Parcel Plus store near his podiatry office and had represented that the address of the Parcel Plus — 1285 Carl D. Silver Parkway — belonged to CPASC. According to the affidavit, Blatstein listed 1285 Carl D. Silver Parkway as CPASC's address on the bills he sent to health insurers, mailed those bills from the Parcel Plus in which the box was located, and used the box to receive payments directed to CPASC. CW-2 also reported that Blatstein had submitted bills in CPASC's name on a form called UB-92, which had been developed by the federal Health Care Financing Administration for hospitals to use in billing for facility charges. CW-2 advised that she had received several telephone complaints from patients questioning the facility fees that had been billed in connection with their visits to Blatstein; one such patient even threatened to sue Blatstein. And, according to CW-2, on one occasion Blue Cross/Blue Shield had forced Blatstein to return a facility fee he had been paid. CW-2 reported that, after this incident, Blatstein stopped billing Blue Cross/Blue Shield for facility fees.

The affidavit also related the reports of several of Blatstein's patients, including Lyndon Friend, for whom Blatstein had removed an ingrown toenail. Mr. Friend's wife, Katrina Friend, informed investigators that when her husband visited Blatstein's office, she noticed a yellow carbon sheet behind some of the paperwork her husband was signing. When Mrs. Friend lifted the top sheet to see what was on the carbon, one of Blatstein's employees noticed her doing so and demanded the paperwork back. Mrs. Friend refused to return the paperwork, and the employee summoned Blatstein, who attempted to physically wrestle the documents away from Mrs. Friend. Mrs. Friend ripped the paper into pieces and left the office with them. She later pieced together the torn documents, and realized that the top sheet bore the heading "Dr. Marc Blatstein, LPM, PC," while the carbon, although identical to the top sheet in all other respects, was headed "Central Park Ambulatory Surgery Center, Inc." J.A. 21.[1]

---

[1]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Another patient described in the affidavit was identified only as "G.S." Around May 2000, Blatstein had treated G.S. for an ingrown toenail. G.S.'s insurer had subsequently received two bills relating to G.S.'s visit to Blatstein. One of these bills was a professional claim for Blatstein, in the sum of $397. The other bill was from CPASC, and claimed $2,595 for itemized hospital charges, including a recovery room. G.S., however, informed the federal investigators that she had never heard of CPASC, and that all of her treatment from Blatstein had occurred in one room.

The affidavit related similar incidents involving two other patients who were insured by the federal Mail Handlers Benefit Plan ("MHBP"). One of the MHBP incidents involved a $12,452 claim from CPASC for itemized hospital charges, including charges for a pre-operation holding room, an operating room, and a recovery room. The other MHBP incident involved $4,454 in charges from CPASC, including charges for a recovery room and operating room. The MHBP insureds whose treatment was the basis for these charges informed investigators that they had never heard of CPASC or been treated in such facilities.

On July 14, 2004, the date of Howard's search warrant application, the United States magistrate judge issued the warrants that Agent Howard sought (the "search warrants"). On July 27, 2004, federal authorities executed the search warrants, searching Blatstein's office and residence, and discovering evidence of his billing scheme. On June 20, 2005, a federal grand jury in Virginia's Eastern District indicted Blatstein on one count of health care fraud, in contravention of 18 U.S.C. § 1347, and seven counts of mail fraud, in violation of 18 U.S.C. § 1341.

The next day, June 21, 2005, Blatstein moved to suppress all evidence seized in the searches of his business and residence, and requested a *Franks* hearing to address his suppression contention.[2] On

---

[2]The Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), obliges a district court to conduct an evidentiary hearing on a motion to suppress if two requirements are met: (1) the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56.

August 25, 2005, the district court issued an Order denying Blatstein's motion to suppress and request for a *Franks* hearing. Then, on October 5, 2005, Blatstein entered a conditional guilty plea to one count of mail fraud in contravention of 18 U.S.C. § 1341, reserving his right to appeal the court's denial of his suppression motion. *See* Fed. R. Crim. P. 11(a)(2) (authorizing conditional guilty pleas). The plea agreement between Blatstein and the prosecution provided that they would jointly recommend a sentence at the low end of Blatstein's 24-30 month guidelines range.

On January 6, 2006, the probation officer submitted to the district court his presentence report concerning Blatstein (the "PSR"). The PSR advised that there were no factors that would warrant a sentence outside Blatstein's advisory guidelines range. Subsequently, on February 3, 2006, Blatstein filed a sentencing memorandum. This memorandum addressed Blatstein's efforts to make restitution, as well as the harm to his livelihood and health that had resulted from his misconduct and prosecution. Attached to Blatstein's sentencing memorandum were letters from several friends and family members, including his mother and brother, expressing their concern over Blatstein's situation. Significantly, Blatstein's memorandum did not suggest that any of his circumstances called for a sentence outside his advisory guidelines range. To the contrary, the memorandum explained that the parties had agreed to recommend a sentence of 24 months, within the guidelines range.

On February 8, 2006, the district court conducted Blatstein's sentencing hearing. Pursuant to the plea agreement, the parties recommended that Blatstein be sentenced to 24 months' imprisonment, the bottom of his guidelines range. The court, however, varied downward, sentencing Blatstein to a prison term of 12 months and one day — despite having failed to notify the parties of a possible downward variance, as required by Federal Rule of Criminal Procedure 32(h). In imposing Blatstein's sentence, the court listed several reasons that it would be "counter productive to incarcerate him for two years": Blatstein's "early efforts to make amends for his wrong doing"; the effect of his offense on his health and profession; "his family"; and the fact that a shorter prison term would "save the United States $25,000 plus that would be wasted by warehousing him for that period of time." J.A. 200.

The prosecution, on the record, noted its objection that Blatstein's below-guidelines sentence was inconsistent with the factors spelled out in § 3553(a). The prosecution did not object, however, to the court's failure to give notice that it intended to vary from Blatstein's guidelines range.

Blatstein has appealed from the denial of his motion to suppress, and the Government has cross-appealed Blatstein's sentence. We possess jurisdiction under 28 U.S.C. § 1291.

## II.

In an appeal of a district court's ruling on a motion to suppress evidence, we review the court's legal conclusions de novo and its underlying factual findings for clear error. *See United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992). When an appellant raises a contention of error that was not presented to the district court in the first instance, we review it for plain error only. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). A party seeking to overturn a ruling under the plain-error test bears the burden of showing (1) that an error occurred, (2) that it was plain, and (3) that it affected the party's substantial rights. *Olano*, 507 U.S. at 732. The correction of plain error lies within our discretion, which we "should not exercise . . . unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and brackets omitted).

## III.

### A.

Blatstein contends that the search warrants were invalid because Agent Howard's affidavit failed to discuss a Virginia statutory provision that would have negated the existence of probable cause for the proposed searches. The Virginia statute on which Blatstein relies authorizes a physician to perform surgery in his office without first obtaining a hospital license, provided the physician's office is not principally used for performing surgery. Va. Code Ann. § 32.1-124 (2004). Blatstein maintains that Agent Howard was aware of this stat-

utory provision, and that if Howard had included it in the affidavit, the affidavit would not have properly supported the issuance of the search warrants.

We reject Blatstein's contention in this regard, because Agent Howard's affidavit would have provided probable cause for the search warrants even if it had specified and discussed the statutory provision whose omission he contests. The question before the magistrate judge, in assessing Agent Howard's warrant application, was whether the affidavit furnished probable cause to believe that Blatstein had committed health care fraud and mail fraud, as defined in 18 U.S.C. §§ 1347 and 1341, and that searches of his office and residence would yield evidence of such offenses. Pertinent to that inquiry, the affidavit indicated that Blatstein had obtained payments from health care benefit programs by falsely representing that CPASC was a facility separate from his podiatry office, and that CPASC's patients were treated in specialized pre-operation, operating, and recovery rooms. Moreover, the affidavit showed that Blatstein had concealed from his patients the fact that he was billing their insurers for surgical facilities purportedly provided by CPASC, and that he had tricked patients into unwittingly signing forms indicating that CPASC had provided them services. In addition, the affidavit advised that Blatstein had used the United States mail to send false bills to insurers and to receive payment for such bills. These assertions gave the magistrate judge probable cause to believe that Blatstein had engaged in health care fraud and mail fraud.

In sum, the showing of probable cause in Agent Howard's affidavit was predicated on Blatstein's billing practices, not on whether he was legally permitted to perform surgery in his podiatry office. Accordingly, even if the affidavit had included a Virginia statutory provision under which Blatstein might lawfully have performed the surgeries for which he billed, it would nonetheless have supplied probable cause to believe that his billing itself was fraudulent. The district court thus did not err in denying Blatstein's motion to suppress and his request for a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (no evidentiary hearing required unless "the allegedly false statement is necessary to the finding of probable cause").[3]

---

[3]Because Agent Howard's affidavit would have provided probable cause for the search warrants even if it had discussed the statutory provi-

## B.

In its cross-appeal, the Government contends that the sentencing court erred in imposing a variance sentence without providing reasonable notice of its intent to do so. The Government acknowledges that it failed to object to this asserted error at Blatstein's sentencing hearing, and that we consequently must review the sentencing court's procedure in this regard for plain error only. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

Federal Rule of Criminal Procedure Rule 32(i)(1)(C) obliges a sentencing court to "allow the parties' attorneys to comment on . . . matters relating to an appropriate sentence." In *Burns v. United States*, 501 U.S. 129 (1991), the Supreme Court held that, under this provision of Rule 32, a court may not depart on a ground not identified as a ground for departure in either the presentence report or a prehearing submission by the parties, unless the court provides the parties reasonable notice that it is contemplating such a departure and informs them of the departure's basis. *See id.* at 138-39.[4] In reaching this result, the Court reasoned that "Rule 32's purpose [is] promoting focused, adversarial resolution of the legal and factual issues" critical to sentencing, and that meaningful adversarial testing is impossible if the parties lack adequate notice of the issues to be resolved. *Id.* at 137. In 2002, the holding of *Burns* was codified as Rule 32(h). *See* Fed. R. Crim. P. 32 advisory committee's notes ("Rule 32(h) is a new provision that reflects *Burns v. United States*, 501 U.S. 129, 138-39 (1991).").[5]

---

sion on which Blatstein relies, we do not reach or address the question of whether Agent Howard's omission of that provision from the affidavit was an intentional falsification or exhibited reckless disregard for the truth.

[4]At the time *Burns* was decided, the provision that is now Rule 32(i)(1)(C) was numbered Rule 32(a)(1). *See Burns*, 501 U.S. at 135.

[5]Rule 32(h) provides as follows:

Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Since the advent of variance sentences as a result of *United States v. Booker*, 543 U.S. 220 (2005), the question has arisen whether *Burns* and Rule 32(h) require notice of potential variances as well as departures. Some of our sister circuits have answered this question in the negative, deciding that variances are outside the scope of *Burns* and Rule 32(h). *See, e.g.*, *United States v. Vampire Nation*, 451 F.3d 189, 196-97 (3d Cir. 2006); *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006); *United States v. Irizarry*, 458 F.3d 1208, 1212 (11th Cir. 2006); *United States v. Long Soldier*, 431 F.3d 1120, 1122 (8th Cir. 2005). We have taken the opposite view, concluding that "notice of an intent to depart or vary from the guidelines remains a critical part of sentencing post-*Booker*," because "[t]here is 'essentially no limit on the number of potential factors that may warrant a departure' or a variance, and neither the defendant nor the Government 'is in a position to guess when or on what grounds a district court might depart' or vary from the guidelines." *United States v. Davenport*, 445 F.3d 366, 371 (4th Cir. 2006) (quoting *Burns*, 501 U.S. at 136-37); a*ccord United States v. Anati*, 457 F.3d 233, 236-37 (2d Cir. 2006); *United States v. Evans-Martinez*, 448 F.3d 1163, 1167 (9th Cir. 2006). Here, neither the PSR nor Blatstein's sentencing memorandum suggested that there existed a proper basis for a variance or departure. The sentencing court was thus obliged, pursuant to Rule 32, to notify the parties of its intent to vary downward from Blatstein's advisory guidelines range.

Blatstein contends, however, that the sentencing court's failure to give notice of its plan to vary downward was not error — or, if it was error, it did not prejudice the Government — because most of the factors that the court cited in support of its downward variance were mentioned in either the PSR or Blatstein's sentencing memorandum. But *Burns* and Rule 32(h) do not permit a court to impose a variance sentence without notice merely because the basis for the variance is mentioned somewhere in the presentence documents. Rather, *Burns* requires reasonable notice of any variance imposed for a reason not previously "identified as a ground" for a possible variance. *Burns*, 501 U.S. at 138. Moreover, *Burns* mandates that the parties be apprised of the grounds on which a planned variance is premised, so that they may subject the rationale for the variance to the adversarial testing process contemplated by Rule 32 and the guidelines. *See Burns*, 501 U.S. at 137; Fed. R. Crim. P. 32(h) (requiring notice of contemplated

departure "on a ground not *identified for departure* either in the pre-sentence report or in a party's prehearing submission" (emphasis added)); *see also United States v. Spring*, 305 F.3d 276, 282-83 (4th Cir. 2002) (Rule 32's requirement of opportunity to comment not sat-isfied even though court's ground for departure was identified in PSR, where PSR listed several possible grounds for departure and court failed to notify parties of planned departure or bases thereof). The sentencing court here failed to give such notice, and it thereby erred.

In *Spring*, we decided that a sentencing court's failure to give notice of a planned departure, as required by Rule 32, constitutes plain error, and that it satisfies the substantial rights prong of *Olano* plain-error review. *See* 305 F.3d at 282. Although *Spring* involved an upward departure that affected the substantial rights of a defendant, we have recognized that the substantial rights of the Government are similarly entitled to protection from plain error. *See United States v. Perkins*, 108 F.3d 512, 517 (4th Cir. 1997). Accordingly, we are con-strained to conclude that the court's Rule 32 error was plain and affected the Government's substantial rights.

*Spring* also recognized that an unpreserved Rule 32 notice error should be corrected on appeal if the party opposing the departure raises contentions that, if developed in response to reasonable notice, might have dissuaded the sentencing court from departing. *See* 305 F.3d at 282-83; *accord United States v. Evans-Martinez*, 448 F.3d 1163, 1167 (9th Cir. 2006). Here, it appears that the Government, given a fair opportunity to prepare, could have raised meritorious objections to the grounds on which the court varied. Notably, the Government has presented forceful challenges to several of the fac-tors on which the court relied in varying downward, including Blatstein's "early efforts to make amends for his wrong doing," the impact that his conduct had on his profession and his family, and the possible savings to the federal government from shortening Blatstein's prison time. Because the parties were not on notice that the court planned to vary downward on these grounds, the variance was not subjected to meaningful adversarial testing. Consequently, *Burns* and *Spring*, our controlling precedents, oblige us to correct the sen-tencing court's plain error under Rule 32.[6]

---

[6]Because we vacate Blatstein's sentence on account of the sentencing court's Rule 32 error, we need not address the Government's alternative contention that the sentence was unreasonable.

## IV.

For the foregoing reasons, we affirm the district court's ruling on the suppression motion. We vacate Blatstein's sentence and remand for resentencing proceedings consistent with Rule 32.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*