# PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

JOHNNY RAY FANCHER,
　　　　　*Defendant-Appellant.*

No. 06-4913

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Robert E. Maxwell, Senior District Judge.
(2:05-cr-00013-REM)

Argued: September 27, 2007

Decided: January 17, 2008

Before TRAXLER and KING, Circuit Judges, and
Benson E. LEGG, Chief United States District Judge
for the District of Maryland, sitting by designation.

Vacated and remanded by published opinion. Judge Traxler wrote the
opinion, in which Judge King and Judge Legg joined.

## COUNSEL

**ARGUED:** Brian Joseph Kornbrath, Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg,
West Virginia, for Appellant. David J. Perri, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Whee-
ling, West Virginia, for Appellee. **ON BRIEF:** Sharon L. Potter,
United States Attorney, Wheeling, West Virginia, for Appellee.

**OPINION**

TRAXLER, Circuit Judge:

Johnny Ray Fancher appeals the 480-month sentence imposed after he pleaded guilty to one count of receiving child pornography. We conclude that the district court did not provide sufficient notice that it was considering an above-Guidelines sentence, and we therefore vacate Fancher's sentence and remand for re-sentencing.

I.

A nine-year-old girl reported to a West Virginia state trooper and a social services caseworker that Fancher, who drove a van for the girl's church, had touched her and her two younger sisters in their "private areas." J.A. 72. The girl said that Fancher told her that "if she kept her mouth shut he could make lots of money off little girls." J.A. 72.

Law enforcement officers thereafter went to Fancher's apartment to question him. When he let them into the apartment, the officers noticed a computer, suggestive pictures of young girls, and notebooks listing websites that appeared to involve child pornography. The officers returned the next day with a search warrant. The search yielded, among other things, sixteen CDs hidden under the carpet and thong underwear that had been pinned in such a way that it would fit a child. Examination of Fancher's computer and the CDs revealed more than 600,000 images of naked girls between the ages of four and fourteen. Of those images, however, only twenty-five to thirty were explicit enough to qualify as child pornography.

Fancher was indicted on one count of possessing child pornography, *see* 18 U.S.C.A. § 2252A(a)(5)(B) (West Supp. 2007), and four counts of receiving child pornography, *see* 18 U.S.C.A. § 2252A(a)(2)(A) (West Supp. 2007). Pursuant to a plea agreement, Fancher pleaded guilty to one count of receiving child pornography. Receipt of child pornography normally carries a sentence of between five and twenty years. *See* 18 U.S.C.A. § 2252A(b)(1) (West Supp. 2007). Because Fancher had a prior conviction for sexually abusing

a minor, however, he was subject to a statutory mandatory minimum sentence of fifteen years and a maximum sentence of forty years. *See id.*

The presentence report set Fancher's offense level at thirty-one. That offense level, with Fancher's category V criminal history and the statutory minimum sentence of fifteen years, yielded a Guidelines sentencing range of 180-210 months. In the section titled "Factors that may warrant departure," the PSR stated:

> The Probation Officer has no information concerning the offense or the offender which would warrant a departure from the prescribed Sentencing Guidelines.
>
> There appears to the Probation Officer to be mitigating factors in this case relevant to the defendant's personal history and characteristics that might impact the sentence pursuant to [18 U.S.C.A. § 3553(a), which requires] the Court [to] impose a sentence sufficient but not greater than necessary to comply with the purposes of the section[,] which includes the need for the sentence imposed to reflect the seriousness of the offense and to promote respect for the law and to provide just punishment for the offense. The sentence shall also afford adequate deterrence to criminal conduct and . . . protect the public from further crimes of the defendant. Given the offense of conviction, a sentence in the . . . Guideline range determined by the Probation Officer may very well reflect the seriousness of the offense. However, given the defendant's prior criminal record involving the exploitation of minors, the guideline sentence may not provide adequate protection to the public from further crimes of the defendant. Given the defendant's criminal history and the ages [of] and relationship to his victims[,] the Court may wish to consider a sentence pursuant to [§ 3553(a)] to meet the objectives of sentencing.

J.A. 91-92. Neither Fancher nor the government objected to the PSR.

After the PSR was completed, the probation officer was contacted by the mother of a sixteen-year-old girl. The mother told the proba-

tion officer that Fancher, who had met her daughter through church, was sending inappropriate letters from jail to her daughter. The probation officer prepared an addendum to the PSR, attached copies of the letters to the addendum, and submitted the addendum to the district court and attorneys. In the letters, which were embellished with hand-drawn hearts, Fancher repeatedly told the girl that he loved her. He asked her to look for a house or mobile home for him to buy, and he told the girl she could live in it while he was in jail. He asked the girl to send him pictures of herself in a bathing suit, and in one letter he asked for three pictures of her—one with the girl wearing a bathing suit, one with her wearing shorts, and another with her wearing a short skirt or dress. Fancher told the girl that he had been having strange dreams about her (and her mother), and he told her that he had her name tattooed on his arm. In almost every letter, Fancher implored the girl to keep the letters secret.

At the sentencing proceeding, counsel for Fancher argued that a sentence of 180 months (the statutory mandatory minimum) would be appropriate. Although the plea agreement did not prohibit the government from seeking an upward departure or a variance from the advisory Guidelines range, the government did not make such a request. The government instead argued for a sentence of 210 months, the top of the Guidelines range, "to ensure the safety of the community and to . . . ensure that [Fancher] would not re-offend." J.A. 38.

The district court noted that Fancher had "a significant history involving the sexual abuse of children." J.A. 41. Noting that Fancher continued his pattern of inappropriate behavior even while he was in jail, the district court found it "difficult to believe that rehabilitation is likely beneficial for this Defendant. After a careful review of the Presentence Report and the Second Addendum thereto, the Court finds that the history and characteristics of . . . the Defendant[ ] necessitate[ ] a more lengthy sentence than that called for by the Sentencing Guidelines." J.A. 41. The district court addressed the factors set forth in 18 U.S.C.A. § 3553(a) and imposed a sentence of 480 months, the statutory maximum.

## II.

On appeal, Fancher contends that the district court erred by not giving him advance notice that the court was considering imposing a variance sentence, as required by Rule 32 of the Federal Rules of Criminal Procedure.[1] We agree.

Our analysis of this issue begins with the Supreme Court's decision in *Burns v. United States*, 501 U.S. 129 (1991). The version of Rule 32 in effect when *Burns* was decided required the sentencing court to "afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." Fed. R. Cr. P. 32(a)(1) (1991 version); *see Burns*, 501 U.S. at 135. The rule, however, did not explicitly require the sentencing court to notify the parties if it intended to make a *sua sponte* departure from the then-mandatory Guidelines. At issue in *Burns* was whether such notice was required. The Supreme Court answered that question in the affirmative.

The Court first found it "obvious[ ]" that "whether a sua sponte departure from the Guidelines would be legally and factually warranted is a matter relating to the appropriate sentence," *Burns*, 501 U.S. at 135 (internal quotation marks and alteration omitted), and the Court believed that it made "no sense to impute to Congress an intent that a defendant have the right *to comment* on the appropriateness of a sua sponte departure but not the right *to be notified* that the court is contemplating such a ruling." *Id.* at 135-36. Noting that "not every silence is pregnant," *id.* at 136 (internal quotation marks and alter-

---

[1]Although Fancher does not raise this issue on appeal, we note that the district court imposed a variance sentence without first considering the propriety of a traditional upward departure under the Guidelines, as required by our post-*Booker* case law. *See, e.g.*, *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) ("[T]he district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence.").

ation omitted), the Court rejected the government's argument that Congress's failure to explicitly require notice was dispositive:

> Here the textual and contextual evidence of legislative intent indicates that Congress did not intend district courts to depart from the Guidelines *sua sponte* without first affording notice to the parties. Such a reading is contrary to the text of Rule 32(a)(1) because it renders meaningless the parties' express right to comment upon matters relating to the appropriate sentence.
>
> The inference that the Government asks us to draw from silence also is inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences. At best, under the Government's rendering of Rule 32, parties will address possible *sua sponte* departures in a random and wasteful way by trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative. At worst, and more likely, the parties will not even try to anticipate such a development; where neither the presentence report nor the attorney for the Government has suggested a ground for upward departure, defense counsel might be reluctant to suggest such a possibility to the district court, even for the purpose of rebutting it. In every case in which the parties fail to anticipate an unannounced and uninvited departure by the district court, a critical sentencing determination will go untested by the adversarial process contemplated by Rule 32 and the Guidelines.

*Id.* at 136-37 (internal quotation marks and alteration omitted). The Court therefore held that

> before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on

which the district court is contemplating an upward departure.

*Id.* at 138-39. In 2002, Rule 32 was amended, and the *Burns* notice requirement was added in a new subsection. *See* Fed. R. Crim. P. 32(h) ("Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.").

In this case, as noted above, the PSR did state that given Fancher's criminal record, the nature of the offense, and the need to protect the public, a non-Guidelines sentence might be warranted. Although an argument perhaps could be made to the contrary, we assume that the notice in the PSR was sufficient to comply with the notice requirements of Rule 32(h).[2] In this circuit, however, we have held that Rule 32's more general requirement that the attorneys have an opportunity to comment on matters relevant to the sentence can require notice beyond that required by *Burns* and Rule 32(h).

---

[2] The relevant section of the PSR noted, in essence, that no departures were warranted, but that a downward variance might be appropriate, that the Guidelines range might be just right, and that an upward variance might be warranted. Thus, the PSR took every possible position on the adequacy of the Guidelines sentence. This cover-all-bases approach gave the attorneys little if any direction when preparing for sentencing and effectively required the attorneys at sentencing to do precisely what the Supreme Court hoped to prevent with its ruling in *Burns*: "try[ ] to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative." *Burns v. United States*, 501 U.S. 129, 137 (1991). The notification in the PSR thus poorly served the purpose underlying Rule 32—ensuring "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Id.* at 134. Fancher, however, does not contend on appeal that the notice in the PSR was so broad or vague as to be ineffective or that the grounds on which the district court based the need for a variance sentence were different from those identified in the PSR. *See, e.g.*, *United States v. Valentine*, 21 F.3d 395, 398 (11th Cir. 1994) (finding *Burns* error where district court departed on ground not identified in government's pre-sentencing motion seeking an upward departure).

In *United States v. Spring*, 305 F.3d 276 (4th Cir. 2002), the PSR noted that an upward departure "might be appropriate based upon the defendant's three prior convictions for similar conduct." *Id.* at 279 (internal quotation marks and alteration omitted). At the sentencing hearing, the government did not seek an upward departure, nor was the possibility of a departure mentioned during the discussions of the objections to the PSR, the defendant's allocution, or the attorneys' final arguments. *See id.* When pronouncing sentence, however, the district court departed upward based on the inadequacy of the defendant's criminal history score. The court sentenced the defendant "[i]mmediately after announcing this departure, and without having asked for or received comment from counsel." *Id.* at 279-80. When counsel for the defendant objected to the sua sponte departure, the district court stated that the PSR had provided sufficient notice. "The court did not then invite [the defendant] to offer arguments against such a departure, nor did [the defendant] attempt to offer any." *Id.* at 280.

On appeal, we concluded that "[t]here was no defect in pre-hearing notice here; the PSR provided notice that a departure to a higher [criminal history category] might be considered at the sentencing hearing." *Id.* at 282. While there was no error under *Burns*, we nonetheless concluded that the district court failed to give counsel a chance to address "matters relating to the appropriate sentence," *id.* (internal quotation marks omitted), as required by what was then Rule 32(c)(1).[3] We explained that the notice contained in the PSR

> informed counsel that they needed to *prepare* arguments on this issue, but not that they needed to *present* them. Although [the defendant] could have offered his arguments preemptively, it is fully understandable why his attorney

---

[3]Then-Rule 32(c)(1) was the same rule considered by the Supreme Court in *Burns*. When *Burns* was decided, the opportunity-to-comment requirement was contained in Rule 32(a)(1). After *Burns*, Rule 32 was amended and reorganized, and the opportunity-to-comment requirement was placed in Rule 32(c)(1). *See* Fed. R. Cr. P. 32, adv. comm. notes, 1994 amendments. The 2002 amendments again re-ordered the rule, and the opportunity-to-comment requirement is now contained in Rule 32(i)(1)(c). *See* Fed. R. Crim. P. 32(i)(1)(c).

would not want to call attention to the possibility of an upward departure. Moreover, it would not serve the interests of judicial economy to encourage counsel to comment on all potential grounds for departure identified in the PSR, as many ultimately have no bearing on the sentence. Here, for example, the PSR noted four possible grounds for departure; if [the defendant] had offered reasons why none of these grounds should apply, his comments regarding three of them would surely have been a waste of time.

By the time the parties received notice that an upward departure was under consideration, the court had already made a final ruling on the issue. The court did not solicit arguments from counsel before announcing this ruling. Thus, the sole option left to [the defendant] was to request reconsideration of a decision that had already been announced and incorporated in a judgment. This is not equivalent to proper adversarial process before a decision is reached; on the contrary, once a sentence is announced, both the specific constrictions of Rule 35(c) and the general inertia of the decision-making process impose substantial burdens on a party seeking to modify a sentence. We therefore hold that error occurred when the district court departed upward without soliciting the views of the parties beforehand.

*Id.* (citations omitted).

*Spring* is factually identical to this case in all relevant respects. As in *Spring*, although the PSR here identified possible grounds for a variance sentence, the government did not seek a departure or a variance but was instead content with a sentence within the Guidelines range. And as in *Spring*, the possibility of a variance sentence was raised first by the district court in the course of pronouncing sentence. Given these factual similarities, we believe that *Spring* must control the disposition of this appeal, unless there is some reason to conclude that subsequent amendments to Rule 32 have effectively overruled *Spring*.

*Spring* was decided before the effective date of the 2002 amendments to Rule 32, which added subsection (h) incorporating the *Burns*

notice standard. In our view, however, the 2002 amendments do not undermine *Spring*'s validity. *Spring* was decided against the backdrop of the notice requirement established by the Supreme Court in *Burns*, and *Spring* can only be understood as establishing an *additional* notice requirement arising from a factual context not present in or considered by the Court in *Burns*. The rule upon which the decision in *Spring* was grounded—then Rule 32(c)(1)—remains part of Rule 32 and contains the same requirement that attorneys be given an opportunity to comment on matters relevant to the determination of the appropriate sentence. *See* Fed. R. Crim. P. 32(i)(1)(c). Because the substantive requirements of the former Rule 32(c)(1) remain the same after the 2002 amendments, we do not believe that Congress's decision to codify the *Burns* holding in Rule 32(h) can be viewed as a repudiation of *Spring*. The addition of Rule 32(h) merely changed the source of the requirement that a sentencing court give advance notice of its sua sponte consideration of a departure or variance. When *Spring* was decided, the source of that requirement was the Supreme Court; after the 2002 amendments, Rule 32 also became a source of that requirement. Because the notice requirement set forth in *Spring* was not in tension with the separate (but related) notice requirement set by the Court in *Burns*, we do not believe it is in tension with that notice requirement as it now appears in Rule 32(h). Accordingly, we conclude that the 2002 amendments to Rule 32 do not affect the continuing viability of *Spring*'s notice requirement. *See United States v. Blatstein*, 482 F.3d 725, 732-33 (4th Cir. 2007) (applying *Spring* in case governed by Rule 32 as amended in 2002).

Under *Spring*, it is clear that the district court failed to give the required notice. The notice in the PSR about possible bases for a variance sentence satisfied the notice requirements of Rule 32(h), just as the notice in *Spring* satisfied the *Burns* notice requirement. While the Rule 32(h) notice found in the PSR informed the attorneys that they must prepare arguments on the issue of the propriety of the variance and have available whatever evidence they wished to present, it did not inform the attorneys that they needed to *present* those matters. *See Spring*, 305 F.3d at 282. As we explained in *Spring*, a "proper adversarial process" requires more than affording an after-the-fact opportunity to convince the court to reconsider the sentence just imposed. *Id.* Instead, a proper adversarial process requires the attorneys to have a meaningful opportunity to offer their views and their evidence on the

merits of a sentencing option under sua sponte consideration by the district court, and timely notification is critical to making the opportunity to comment a meaningful one. This is not an onerous requirement; as suggested in *Spring*, the requirement could generally be satisfied by the district court simply informing counsel it is considering a departure or variance and giving each side an opportunity to respond before the court announces the sentence. In this case, however, the district court did not solicit argument from the attorneys on the variance question or otherwise give them notice before the sentence was imposed that it was considering a variance sentence. The failure to notify the parties that it was considering a variance sentence deprived the parties of the opportunity to reply to the propriety of the variance, as required by *Spring* and Rule 32(i)(1)(c).

Because counsel for Fancher specifically objected to the absence of notice at the first opportunity (after the district court pronounced sentence), the issue is properly preserved. *See id.* at 281. We therefore apply the harmless error rather than plain error standard when determining whether the district court's failure to provide notice requires us to remand for re-sentencing. Under harmless error review, it is incumbent upon the government to show that Fancher was not prejudiced by the district court's error. *See, e.g.*, *United States v. Strickland*, 245 F.3d 368, 379-80 (4th Cir. 2001). In our view, the government has not carried this burden.

Preliminarily, we note that counsel's ability to challenge the propriety of the variance after it had been announced and sentence had been imposed is not sufficient to cure the error. *See Spring*, 305 F.3d at 282 ("By the time the parties received notice that an upward departure was under consideration, the court had already made a final ruling on the issue. The court did not solicit arguments from counsel before announcing this ruling. Thus, the sole option left to [the defendant] was to request reconsideration of a decision that had already been announced and incorporated in a judgment. This is not equivalent to proper adversarial process before a decision is reached . . . .").

Nor can we conclude that counsel's opportunity to argue for the statutory minimum sentence *before* the court announced the sentence was sufficient to render the notice error harmless. An example of the inadequacy of the pre-sentence arguments may be found in the issue

of rehabilitation. The district court based its decision to impose a non-Guidelines sentence in part on the court's belief that Fancher's jailhouse letters to the sixteen-year-old girl demonstrated that Fancher "grooms or grows" his victims. J.A. 41 (internal quotation marks omitted). The court concluded that because Fancher could not stop grooming victims even from jail, Fancher would not benefit from any treatment or rehabilitation programs. *See* J.A. 41, 43. Before the sentence was announced, counsel had argued that Fancher was "very interested in taking advantage of the Sexual Offender Treatment Program offered by the Federal Bureau of Prisons." J.A. 37. After the court announced the sentence, counsel explained that had he been aware of the court's view that Fancher himself could not be rehabilitated, counsel would have presented testimony from experts with experience in the treatment program, testimony that may have alleviated the court's concern about Fancher's likely success under the program and the risk of recidivism. *See* J.A. 51.

Because such testimony might well have affected the district court's view of the likelihood that Fancher would re-offend, an issue that was clearly important to the court's view of the proper sentence, we cannot conclude that Fancher suffered no prejudice from the district court's failure to provide notice that it was considering a variance sentence. *Cf. Spring*, 305 F.3d at 283 (reversing under the more stringent plain error review because court's failure to give proper notice "impaired [the defendant's] opportunity to be heard on an important matter affecting his sentence and because his arguments against the upward departure have sufficient weight that the district court, in the exercise of its broad discretion, might accept them when [the defendant] has a chance to present them"). The district court's failure to give the notice required by *Spring* and Rule 32(i)(1)(c) therefore cannot be viewed as harmless error. Accordingly, we hereby vacate Fancher's sentence and remand for a new sentencing hearing.[4] Given the nature of the error in this case and the type of information that will

---

[4]Our conclusion that the district court failed to give Fancher the notice required by Rule 32(i)(1)(c) and *Spring* makes it unnecessary for us to consider Fancher's claim that the failure to provide notice violated his rights under the Due Process Clause. We likewise decline to consider at this juncture Fancher's claim that the 480-month sentence imposed by the district court is substantively unreasonable.

be relevant to the ultimate sentencing decision, we confirm that the re-sentencing should proceed *de novo. See, e.g., United States v. Broughton-Jones*, 71 F.3d 1143, 1149 n.4 (4th Cir. 1995); *United States v. Bell*, 5 F.3d 64, 67 (1993).

*VACATED AND REMANDED*