**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4282**

_____

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

      v.

BOBBIE LYNN PEREZ, a/k/a Bobbie Lynn Wallace,

                  Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern.  Louise W. Flanagan, District Judge.  (5:10-cr-00396-FL-1)

_____

Submitted:  June 6, 2013           Decided:  June 13, 2013

_____

Before MOTZ and GREGORY, Circuit Judges, and Ellen L. HOLLANDER, United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

Jane C. Norman, BOND & NORMAN, Washington, D.C., for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Joshua L. Rogers, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Bobbie Lynn Perez pled guilty to one count of mail fraud, 18 U.S.C.A. § 1341 (West Supp. 2012), and three counts of wire fraud, 18 U.S.C.A. § 1343 (West Supp. 2012). The district court varied above the Guidelines range and sentenced Perez to four years of imprisonment. Perez appeals her sentence, contending that the district court erred when it failed to give notice that it intended to impose a sentence above the Guidelines range, departed upward without adequate justification, and incorrectly determined the amount of loss, U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(C) (2011). For the reasons explained below, we affirm.[1]

While Perez was pregnant in early 2010, she agreed to have her child adopted by three different families, located in California, New York, and North Carolina. From March to May 2010, Perez requested money for living and medical expenses from all three families during her pregnancy and all three sent her money, a total of $11,897. During the same time period, Perez

---

[1] We scheduled argument in this case for May 17, 2013. However, due to counsel's illness, argument could not be held. On May 31, 2013, Perez moved to waive oral argument and to submit the case on the briefs; the Government does not oppose the motion. We grant the motion because we conclude that the facts and legal contentions are adequately presented in the record and briefs, and that oral argument would not aid the decisional process.

spent over $16,000 at a casino in Las Vegas, Nevada. Perez's baby was born prematurely in May 2010 and adopted by the couple from New York, known in this litigation as "TM and SK." Perez did not inform the other families that the baby had been born. She continued to request and receive money from the family in California.

After Perez's guilty plea to mail and wire fraud, the probation officer calculated her advisory Guidelines range as 18-24 months, based on a loss of more than $10,000 but not more than $30,000. The probation officer also suggested that an upward departure might be justified because of the emotional trauma caused to the families that did not adopt Perez's baby. See U.S.S.G. § 2B1.1, cmt. n.19(A)(ii) (departure may be warranted for substantial non-monetary harm). Perez objected to the inclusion in the loss amount of all the money she received from the families during her pregnancy, arguing that the couple who adopted her baby had not suffered any pecuniary harm.

At sentencing, the district court decided that all three families were victims who suffered pecuniary harm because all three reported that they would not have sent money to Perez during her pregnancy had they known that she was offering her child to others for adoption as well as to them. The court overruled Perez's objection and adopted the Guidelines calculation recommended in the presentence report. The court

3

then imposed a variance sentence above the Guidelines range, explicitly citing the sentencing factors set out in 18 U.S.C. § 3553(a) (2006), and describing Perez as a predator from whom the public needed protection. After pronouncing sentence, the court added that it could have reached the same sentence by means of a departure under Application Note 19 because of the severe non-monetary trauma suffered by the families who did not adopt Perez's child, and the court explained how it could have structured the departure.

We review a sentence for reasonableness under an abuse of discretion standard, Gall v. United States, 552 U.S. 38, 51 (2007), which requires consideration of both the procedural and substantive reasonableness of a sentence. Id.; see United States v. Lynn, 592 F.3d 572, 575 (4th Cir. 2010).

Perez first contends that the district court made a departure above the Guidelines range, and that it was thus required to give her reasonable advance notice of its intention to depart or vary above the Guidelines range, which the district court failed to do. Such notice is required only when the sentencing court departs from the Guidelines range. See Burns v. United States, 501 U.S. 129, 135 (1991). However, when the sentencing court varies from the Guidelines range, the notice requirement does not apply. Irizarry v. United States, 553 U.S. 708, 713-14 (2008). Here, the district court specified that it

4

was imposing a sentence above the Guidelines range based on its consideration of the sentencing factors set forth in § 3553(a). Such a sentence constitutes a variance, not a departure. See United States v. Rivera-Santana, 668 F.3d 95, 100 n.6 (4th Cir.), cert. denied, 133 S. Ct. 274 (Oct. 1, 2012). Therefore, prior notice to Perez was not required. Irizarry, 553 U.S. at 713-14. Perez's reliance on United States v. Fancher, 513 F.3d 424 (4th Cir. 2008) (holding that notice of possible variance given in the presentence report is insufficient), is unavailing because Fancher was abrogated by Irizarry.[2]

Next, Perez maintains that the district court made a significant departure without sufficient explanation and without addressing the mitigating factors she advanced, such as her difficult early life and her addictions to drugs and alcohol. A "deferential abuse-of-discretion standard applies to any sentence, whether inside, just outside, or significantly outside the Guidelines range." Rivera-Santana, 668 F.3d at 100-01 (internal citation and quotation marks omitted). In reviewing a variance, the appellate court must give due deference to the

---

[2] The government contends that Perez did not preserve this issue because she did not object to a lack of notice in the district court, and that the issue should thus be reviewed for plain error. United States v. Olano, 507 U.S. 725, 732 (1993). We need not decide whether de novo or plain error review is appropriate because no error occurred and Perez's claim fails under both standards of review.

sentencing court's decision. <u>United States v. Diosdado-Star</u>, 630 F.3d 359, 366 (4th Cir.), <u>cert. denied</u>, 131 S. Ct. 2946 (2011). The issue was preserved for appeal when Perez "[drew] arguments from § 3553(a) for a sentence different than the one ultimately imposed," which "sufficiently alert[ed] the district court of its responsibility to render an individualized explanation addressing those arguments." <u>Lynn</u>, 592 F.3d at 578.

As noted above, Perez mistakenly characterizes the variance sentence as a departure. While the court did not give an extensive "individualized assessment" of the facts on which it based its decision to depart from the Guidelines and impose a four-year sentence, <u>see</u> <u>Lynn</u>, 592 F.3d at 576, the court did state that Perez was a predator from whom the public needed to be protected. The court also noted that Perez's conduct had caused significant emotional trauma to two of the three families. The implied finding was that these factors outweighed the mitigating factors Perez presented. Moreover, the district court explicitly stated that it found "a sentence of four years is the one that accomplishes the purposes of sentencing. That's a sentence that's sufficient, but not greater than necesssary."

Further, the district court stated that it could have alternatively entered the same sentence by departing upward from the Guidelines. As the PSR and the court noted, Application Note 19(A) to § 2B1.1 states that "[t]here may be cases in which

6

the offense level determined under this guideline substantially understates the seriousness of the offense" in which case, "an upward departure may be warranted." Application Note 19(A)(ii) specifically provides that in determining whether an upward departure is warranted, the court may consider whether "[t]he offense caused or risked substantial non-monetary harm" such as "severe emotional harm." U.S.S.G. § 2B1.1, App. n.19(A)(ii). The district court found that Perez's offense caused "substantial nonmonetary harm" in that "[a]t least two of the three families expecting to adopt [the] child suffered significant emotional trauma." As a result, the court "discount[ed] the suitability of the [sentencing] range" for offense levels 11 through 17 "as not capturing the harm" Perez caused, and concluded that a total offense level of 18 yielded a sentencing range that suitably captured the harm. Thus, the court's explanation for its sentence was adequate.

Last, Perez contends that the district court erred in finding that the family who adopted her child, TM and SK, suffered a loss under U.S.S.G. § 2B1.1(b)(1)(C). Had the court found otherwise and excluded from the loss amount the money TM and SK sent to Perez, the loss amount would have been reduced to $7,043. As a result, Perez's base offense level would have been reduced by two levels, and her Guidelines range would have been reduced from 18-24 months to 12-18 months. The district court's

7

calculation of the loss amount attributable to a defendant is a factual determination reviewed for clear error. See United States v. Mehta, 594 F.3d 277, 281 (4th Cir. 2010).

Enhancements under § 2B1.1(b) are determined by the amount of loss resulting from the fraud. The loss amount is the greater of the actual loss or the intended loss. U.S.S.G. § 2B1.1, cmt. n.3(A). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," and "intended loss" is the pecuniary harm that was intended from the offense. Id., cmt. n.3(A)(i)-(ii). Application Note 3(C) to § 2B1.1 provides that the district court need only make a reasonable estimate of the loss and "the court's loss determination is entitled to appropriate deference."

The record reflects that during the time Perez solicited and received money from the three families, she spent over $16,000 gambling at a Las Vegas casino. The record also shows that, with respect to at least $8,100 of the money, including $4,025 from TM and SK, the families sent and Perez received the wire transfers at the casino. Further, although Perez asked the families for the money to assist with her living and pregnancy-related medical expenses, the record contains no evidence that Perez actually used any of the money for those purposes. On the basis of the record evidence, the district

8

court found that TM and SK, like the other prospective parents, suffered actual loss because "if they had known that this was going on they would not have given the defendant money."

In light of the Sentencing Commission's direction that "actual loss" includes "pecuniary harm that the defendant . . . under the circumstances[] reasonably should have known was a potential result of the offense," § 2B1.1, cmt. n.3(A)(iv), we cannot say that the district court clearly erred in calculating the loss amount to include the money TM and SK sent to Perez.[3] Mehta, 594 F.3d at 281. Moreover, fraud encompasses deceptive acts which deprive others of "the intangible right to control the disposition of [their] assets." United States v. Gray, 405 F.3d 227, 234 (4th Cir. 2005); see also United States v. Gillion, 704 F.3d 284, 295-96 (4th Cir. 2012) (finding employee, who concealed his identity to trick his employer into selling him trailers for use in a competing business, committed fraud by interfering with his employer's right to dispose of its property). Finding no reversible error, we must affirm.

---

[3] The record does not reveal when Perez decided that TM and SK would actually adopt her baby, and there is nothing in the record to suggest that Perez intended to keep her baby. Nonetheless, the loss amount does not change even if the only reasonable conclusion were that Perez intended to defraud two of the three families who sent her money while seeking to adopt her baby, but not all three. For, the loss amount is the greater of the actual loss or the pecuniary harm that was intended to result from the offense. U.S.S.G. § 2B1.1, cmt. n.3(A).

We therefore affirm the sentence imposed by the district court.

AFFIRMED