PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    v.

JITEN D. MEHTA,

        *Defendant-Appellant.*

No. 08-4489

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(8:06-cr-00099-DKC-1)

Argued: October 30, 2009

Decided: February 5, 2010

Before GREGORY, SHEDD, and DUNCAN,
Circuit Judges.

---

Affirmed by published opinion. Judge Shedd wrote Parts I and II.A. of the opinion, in which Judge Gregory and Judge Duncan concurred. Judge Duncan wrote Part II.B. of the opinion, in which Judge Gregory concurred. Judge Shedd wrote separately on Part II.B. and concurred in the judgment.

---

## COUNSEL

**ARGUED**: David Schertler, SCHERTLER & ONORATO, LLP, Washington, D.C., for Appellant. David Ira Salem,

OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lisa A. Fishberg, SCHERTLER & ONORATO, LLP, Washington, D.C., for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

SHEDD, Circuit Judge:

Jiten Mehta appeals his conviction and sentence for 16 counts of aiding and assisting in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2) and 17 counts of wire fraud in violation of 18 U.S.C. § 1343. Mehta contends that the district court erred in (1) denying his motion for judgment of acquittal on the wire fraud counts; (2) denying his motion for a subpoena under Federal Rules of Criminal Procedure 17(c); and (3) calculating the tax loss by extrapolating from a non-random sample of audited returns to determine his offense level under U.S. Sentencing Guidelines Manual § 2T1.4(a). For the following reasons, we reject these contentions and affirm.

I.

We first consider the district court's denial of Mehta's motion for judgment of acquittal on the wire fraud counts. *See* Fed. R. Crim. P. 29. Mehta argues that there was insufficient evidence of wire fraud to support the verdict. We review a district court's denial of a motion for judgment of acquittal *de novo*. *United States v. Gray*, 405 F.3d 227, 237 (4th Cir. 2005). We will uphold the verdict if it is supported by substantial evidence. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). Substantial evidence is evidence that a reasonable fact-finder could accept as adequate and sufficient to establish a defendant's guilt beyond a reasonable doubt. *Id.*

Because Mehta appeals his conviction, we view the facts in the light most favorable to the government. *See United States v. Quinn*, 359 F.3d 666, 670 (4th Cir. 2004). The evidence at trial tended to establish that Mehta was a tax preparer who served many immigrant clients in Maryland through his company, JDM World Financial Services Group, Ltd. (collectively, "Mehta"). When a taxpayer came to Mehta, he would have the taxpayer complete a worksheet disclosing expense information that he would then use to determine if the taxpayer would be eligible to file a Schedule A, which lists itemized deductions claimed on the tax return. Mehta personally interviewed taxpayers who appeared to qualify for filing Schedule A returns, but he did not ask detailed questions in order to determine how to accurately report itemized deductions. Six taxpayers testified to the events, and their testimony established that many of the Schedule A returns Mehta filed did not correspond to the information they provided. Moreover, although the taxpayers' circumstances varied, their filed returns contained deductions that were similar. For example, Mehta repeatedly fabricated or exaggerated deductions, often in similar amounts, in the categories of unreimbursed business expenses, medical expenses, charitable contributions, and miscellaneous deductions. He would also use similar descriptions in many of the returns such as "shoes, socks, boots, gloves, . . . uniform, [and] dry cleaning." J.A. 1437. Two undercover IRS agents testified that they had comparable experiences to that of the taxpayers who testified. The loss amount proved at trial by the taxpayers' testimony and other evidence concerning tax returns filed by Mehta was $42,614.

Mehta participated in the Refund Anticipation Loan ("RAL") program that allows a taxpayer to obtain an advance on his refund through the tax preparer. Under the RAL program, Mehta would submit a taxpayer return to the IRS and to BankOne, the participating bank, by using Drake Software, an electronic transmitter. BankOne would then send electronic authorization to Mehta, permitting him to issue a check to the taxpayer. Once it was processed, the actual refund was sent by

the IRS to BankOne to cover the "loan" made to the taxpayer through Mehta. BankOne electronically transmitted Mehta's fees from each transaction through Drake Software to Mehta's bank account in Maryland. Shirley Carter, an employee of Chase Bank (formerly, BankOne), testified that Drake Software is located in North Carolina and that Mehta's use of Drake Software was necessary for his participation in the RAL program. Additionally, Mehta stipulated that, as part of the RAL process, "electronic returns would travel through interstate wires from Mehta's offices in [Maryland], through Drake in North Carolina, to IRS Service Centers outside the state of Maryland." J.A. 143.

To obtain a conviction for wire fraud under 18 U.S.C. § 1343, the government must prove that (1) Mehta knowingly and willfully participated in a scheme to defraud and (2) used interstate wire communications in furtherance of such a scheme. *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006). Ms. Carter's testimony and Mehta's stipulation, at minimum, established that Mehta, located in Maryland, used interstate wire transmissions to communicate with Drake Software in North Carolina regarding the fraudulently prepared tax returns, tax refunds, and check authorizations. Therefore, this evidence was sufficient to prove that the information was transmitted by interstate wire communication in furtherance of a scheme to defraud, thus satisfying each element of the offense. *See* § 1343.

Mehta also contends that a variance between the indictment and proof at trial required the district court to grant his motion for judgment of acquittal. Where the evidence at trial proves facts materially different from those alleged in the indictment, "[c]onvictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." *United States v. Miller*, 471 U.S. 130, 136 (1985). A variance between the indictment and the proof at trial does not require reversal or dismissal of those charges unless it affected the substantial

rights of the defendant and thereby resulted in actual prejudice. *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994). Prejudice may result if the variance surprises the defendant at trial and thereby hinders his ability to prepare for his defense or if the variance exposes the defendant to a risk of a second prosecution for the same offense. *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). Other courts have found that the type of variance before us here is not prejudicial. *See United States v. Dupre*, 462 F.3d 131, 140-43 (3d Cir. 2006) (affirming the conviction where the indictment alleged a wire transfer between two states which differed from the transfer proved at trial); *United States v. Ratliff-White*, 493 F.3d 812, 822 (7th Cir. 2007) (affirming the conviction despite a variance between the indictment and the proof at trial regarding a particular step in the payment process).

The indictment charged Mehta with "knowingly caus[ing] to be transmitted in interstate commerce by means of wire communications certain . . . wire transfers relating to client fees from BankOne, Belleville, Michigan to [Mehta's] business account at Wachovia Bank, Takoma Park, Maryland." J.A. 20. At trial, rather than proving that the wire transmissions originated in Michigan, the government proved that the tax returns were processed through Drake Software, located in North Carolina.

The variance here did not prejudice Mehta. There is nothing in the record that indicates that Mehta would have prepared differently for his defense if the indictment had charged that the wire communication was between North Carolina and Maryland rather than Michigan and Maryland. Despite the variance, the evidence at trial proved the same scheme to defraud using the RAL program as that described in the indictment. Therefore, we affirm the convictions for wire fraud.[1]

---

[1]Mehta also challenges the district court's denial of his motion for a Rule 17(c) pre-trial subpoena of tax returns filed by the taxpayers who tes-

II.

Next, we consider whether the district court erred in calculating the tax loss for sentencing purposes. Under the Guidelines, Mehta's base offense level is determined by the amount of tax loss[2] attributable to this offense. U.S.S.G. § 2T1.4(a)(1). In considering the district court's application of the Sentencing Guidelines, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006). Generally, the district court's calculation of the amount of loss for sentencing purposes is a factual finding reviewed for clear error. *See United States v. Loayza*, 107 F.3d 257, 265 (4th Cir. 1997).

In establishing the tax loss under § 2T1.1 of the Sentencing Guidelines, the government proposed that the district court consider the 4,321 Schedule A returns filed by Mehta over the four-year period under investigation to find a tax loss of $2,508,000. The IRS had selected approximately 941 returns for civil audit by scoring each of the Schedule A returns and choosing those most likely to produce additional tax liability. Of these 941, 775 were selected for a correspondence audit, and the remaining returns were accepted as filed. As part of the correspondence audit, the IRS furnished the taxpayers with a computation of what their additional tax liability would be if they did not produce documentation. Approximately 30% of the taxpayers (or 307 returns) signed IRS Form 4549

tified at trial during the three-year period prior to the tax returns covered by their testimony. Mehta asserted that these taxpayers claimed similar deductions on these prior returns, which were prepared by other preparers. Because the district court did not abuse its discretion in ruling that Mehta failed to provide any support for his speculation as to the contents of the tax returns sought, we affirm its order denying the motion. *See United States v. Nixon*, 418 U.S. 683, 699-700, 702 (1974).

[2]The tax loss attributable to a defendant involved in aiding in the preparation and filing of false tax returns is "the tax loss, as defined in § 2T1.1, resulting from the defendant's aid, assistance, procurance, or advice." U.S.S.G. § 2T1.4(a).

agreeing to pay the additional tax assessment. The total additional tax liability for these 307 returns was approximately $473,000, and the average tax assessed "per agreed-upon audit" was $1,531.

Of the 4,321 Schedule A returns filed, the district court considered only 2,500 returns which Mehta filed during the last two years of the investigation. The court extrapolated the loss for these 2,500 returns. It multiplied 2,500 by 30% to equal 750 returns, and multiplied 750 by the $1,500 average audited tax loss per return to arrive at $1,125,000. Therefore, the court calculated a tax loss between $1,000,000 and $2,500,000 pursuant to Guideline § 2T4.1, resulting in a base offense level of 22. The court applied a two-level increase because Mehta was in the business of preparing tax returns. U.S.S.G. § 2T1.4(b)(1). The Guidelines range for offense level 24 is 51-63 months, but the district court varied downward and sentenced Mehta to 48 months imprisonment.

The government bears the burden of establishing the tax loss by a preponderance of the evidence. *See United States v. Butler*, 277 F.3d 481, 487 (4th Cir. 2002). The amount of tax loss is not always a precise figure, and "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1, cmt. n. 1. Furthermore, a district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see United States v. Schroeder*, 536 F.3d 746, 753 (7th Cir. 2008) (requiring the court to weigh the evidence to determine whether the government has proven that it is more probable than not that the evidence is reliable to prove the fact asserted).

A.

First, Mehta argues that the district court erred in including in its loss calculation the tax liability of those audited returns

filed by taxpayers who later signed IRS Form 4549. We disagree. By signing Form 4549, the taxpayers did not substantively agree with the IRS assessment, but they agreed to pay the assessment and waive their right to contest the assessment without payment of the tax in the United States Tax Court. In addition, an IRS Agent testified at trial that he personally reviewed each of the 307 agreed-upon audited returns and discovered that the fraudulent deductions taken on those returns fit the pattern of fraud evidenced at trial. Based on this evidence, the district court found that the audited returns revealed a "pattern of numbers" reported for various deductions that was strikingly similar to the returns proven fraudulent at trial. Thus, there was ample evidence to support the court's finding that that it was more probable than not that Mehta fraudulently prepared the audited returns such that they could be used to calculate the tax loss.

DUNCAN, Circuit Judge:

## B.

Second, Mehta argues that the district court erred in multiplying the average tax liability per agreed-upon audit by the 2,500 Schedule A returns filed by Mehta during the last two years of the investigation in calculating the total tax loss. We agree. In conducting that calculation, the court determined that, because 30% of the "flagged for audit" returns had an average tax loss of $1,531, this meant that approximately 30% of all the Schedule A returns filed by Mehta during that period would also have an average tax loss of $1,531. The problem with this approach is that the 30% figure was derived from a non-random universe of returns that shared the characteristic of having been identified by a computer program as being more likely to contain errors.

While extrapolation might, in some cases, be a reasonable method to estimate tax loss, the process used here by the district court goes against the very principles that underlie

extrapolation. To extrapolate means "to estimate the values of . . . a function or series . . . outside a range in which some of its values are known, on the assumption that the trends followed inside the range continue outside it." *Oxford English Dictionary* (2d ed. 1989). As the definition indicates, extrapolation in this case would require a threshold finding that the trend in the known sample, namely the average tax loss in the "flagged for audit" returns, was likely to be present in the larger group of all 2,500 of the Schedule A returns prepared by Mehta during that period. That threshold requirement clearly failed here because the very reason that the "flagged for audit" returns were flagged in the first place was that they were different from the rest of the larger group.

The district court recognized the problem by noting the fact that the "flagged for audit" sample used to calculate the tax loss was not random. The court stated at sentencing, "I just caution for future cases that you can't propose that it's a random sample unless it is." J.A. 1534. The court specifically noted: "We are all speculating that the computer program is designed to flag those most likely to benefit the Government, but I am certainly not in any position to know what those so-called red flags might be, and no one here has been able to enlighten me." J.A. 1529. Because the district court "was certainly not in any position" to understand whether the sample offered was representative of the larger group of 2,500 returns, J.A. 1534, it erred in using that sample to extrapolate the tax loss for the larger group.

In evaluating a district court's error in its sentencing calculations, we must determine whether the error was harmless. *See Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009) (finding that "procedural errors at sentencing . . . are routinely subject to harmlessness review"); *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006) (finding that harmless error review applies to alleged sentencing errors); *United States v. Stokes*, 261 F.3d 496, 499-500 (4th Cir. 2001) (applying harmlessness review to a sentencing error). The error is harm-

less if the resulting sentence was not "longer than that to which [the defendant] would otherwise be subject." *Stokes*, 261 F.3d at 499 (citing *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (en banc)). Here, in determining Mehta's sentence, the district court chose the offense level that corresponded to a tax loss range of $1,000,000 to $2,500,000. Because a reasonable estimate of the tax loss in this case would be in excess of $1,000,000, the district court's error in arriving at its estimate did not result in a longer sentence for Mehta.* Mehta therefore received the same sentence that he would have received had the district court not erred in its calculations. Accordingly, the error is harmless.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

*The record shows that the government "flagged for audit" 941 returns from the group of all of the 4,321 returns prepared by Mehta for the four-year period between 1999 and 2002. J.A. 1424. Of the 941 returns "flagged for audit," a total of 775 returns were actually audited. The IRS contacted taxpayers about additional tax debts in 715 of those cases. Of those, 318 were cases in which the taxpayers agreed with the tax reassessment ("agreed-upon-reassessment returns") and 397 were cases in which the taxpayers did not respond to the government's reassessment correspondence. Because both of these groups of returns "contained similar false information," J.A. 1362, the sample of 318 agreed-upon-reassessment returns was reasonably representative of the larger universe of 715 total returns that required reassessments.

The government established that the agreed-upon-reassessment returns showed an average tax loss of $1,531. It would therefore have been reasonable for the district court to estimate that all 715 of the returns that required reassessments had an average tax loss of $1,531. This would amount to an estimated tax loss of $1,094,665. Because this amount exceeds one million dollars, it would have been sufficient to support the offense level calculated by the court pursuant to Guideline § 2T4.1 and the corresponding sentence.

SHEDD, Circuit Judge, concurring in the judgment:

Having written Parts I and II.A., I write separately on Part II.B. because I cannot join the majority in finding clear error (albeit, harmless) in the district court's calculation of the tax loss. The Guidelines recognize that "when indirect methods of proof are used, the amount of tax loss may be uncertain"; therefore, a district court is not required to find a precise figure but is instead required to make a "reasonable estimate based on available facts." U.S.S.G. § 2T1.1, cmt. n. 1.[1] In making a reasonable estimate of the total amount of tax loss where multiple instances of fraud are alleged, a sentencing court may extrapolate the average amount of loss from a sample of audited returns and apply that average to the remaining returns for which the amount of loss is unknown. *See United States v. Bryant*, 128 F.3d 74, 76 (2d Cir. 1997) (finding the district court's estimation of total loss based on an average loss of less than $100 per unaudited return where audits revealed an average loss of more than $2,400 per return to be "highly generous"). There is no requirement that the sample be *random* so long as the district court takes measures to make sure that the estimate is a *reasonable* one.

The district court's calculation of tax loss here was a reasonable estimate. Because the district court questioned whether the sample of audited returns was representative of the large group, it took measures to compensate for any error in the extrapolation by drastically reducing the universe of returns. The court reduced the number of Schedule A returns it considered from 4,321 to 2,500 by taking only two years of returns despite its finding that Mehta falsified returns for at least four tax years. It then considered only 30% (750) of that

---

[1]*Cf. United States v. Pierce*, 409 F.3d 228, 234 (4th Cir. 2005) (upholding district court's estimation of loss caused by fraudulent scheme based on witness's testimony regarding the number of purchases made and that the conspiracy maintained the same level of purchasing activity throughout the duration of the conspiracy).

2,500. Then, considering only 750 returns, the court extrapo-
lated the average tax loss of the audited returns to arrive at an
amount that exceeds $1 million dollars. Viewing the conser-
vative methodology employed by the district court in its loss
calculation, I conclude that the amount of tax loss was a rea-
sonable estimate based on available facts and that the district
court did not clearly err.[2]

---

[2]Reasonableness is necessarily a case-by-case determination, and in
some instances, a non-random sample cannot be used to make a reason-
able estimate. If, based on the way the audited returns were selected (for
example, based on the amount of income reported), the average tax loss
per audited return is likely to be much higher than the tax loss for the
unaudited returns, the district court may not be able to compensate for the
skewed sample by merely reducing the universe of returns as it did here
or by reducing the average tax loss used to extrapolate as was done in *Bry-
ant*. *See*, *e.g.*, *United States v. Ahanmisi*, No. 07-5051, 2009 WL 1144154
(4th Cir. Apr. 29, 2009).