**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-4907**

_____

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

TRAVIS DORAN RAMSEUR, a/k/a 50,

                    Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Richard L. Voorhees, District Judge.  (5:05-cr-00009-RLV-DCK-21)

_____

Argued:  March 26, 2010               Decided:  May 13, 2010

_____

Before MOTZ, KING, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Motz and Judge King joined.

_____

**ARGUED:** Nathan J. Taylor, ANDERSON TERPENING, PLLC, Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** William R. Terpening, ANDERSON TERPENING, PLLC, Charlotte, North Carolina, for Appellant.  Edward R. Ryan, Acting United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Appellant Travis Ramseur ("Ramseur") appeals his conviction and sentencing for conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana in violation of 18 U.S.C. § 846. He challenges the district court's decision not to declare a mistrial after a witness mentioned a murder charge during examination, as well as its decision to apply a sentencing enhancement under U.S.S.G. § 2D1.1(d). Constrained by the applicable standards of review, we affirm.

I.

During the course of Ramseur's four-day trial and four-day sentencing hearing, the government presented evidence composed largely of witness testimony. We provide a general recitation of the relevant facts, but focus on particular testimony as needed. We set forth the facts in the light most favorable to the government, the prevailing party below. United States v. Mehta, 594 F.3d 277, 279 (4th Cir. 2010).

A.

Between 1999 and 2004, Rickie Eckles ("Eckles") ran a drug distribution operation in and around Statesville, North Carolina, in Iredell County. The operation involved dozens of individuals and large quantities of cocaine, crack, and

2

marijuana. Sometime in the early 2000s, Eckles formed an association with Ramseur, through which Ramseur bought bulk quantities of drugs and resold them on the street.

After Eckles and thirty-five other coconspirators were indicted, in their quest for sentence reductions based on substantial assistance, he and seven others testified about Ramseur's various roles and extensive involvement in the venture.[1] Also, Detective David Ramsey of the Iredell County Sheriff's Office testified about his in-depth investigation of Ramseur. Detective Ramsey conducted surveillance of Ramseur while he bought drugs from Eckles, listened to numerous wiretapped phone conversations in which Ramseur talked about his drug trafficking, and personally interviewed every cooperating witness prior to their testifying at Ramseur's trial. This cumulative testimony painted a detailed picture of Ramseur's involvement: it made out the amounts of cocaine, crack, and marijuana Ramseur purchased; the individuals in the conspiracy whom he worked with to sell drugs; and the time period, beginning as early as 1996, during which he trafficked in the Statesville area.

---

[1] The government produced one additional witness at trial who was not indicted as part of the Eckles conspiracy, but who had personal knowledge of Ramseur's activity.

During the course of Eckles's examination, he was asked when he began selling drugs to Ramseur. Eckles first said he began dealing with Ramseur in 2000 or 2001, but later said it was in 2003. He maintained, however, that he stopped selling to Ramseur in November 2004. When defense counsel asked if he was sure about when he stopped selling to Ramseur, Eckles said, "[m]y last time I dealt with him was the time -- if that was the time when the murder charge -- that's the last time." J.A. 187. Defense counsel moved to strike this comment, and the district court granted the motion. The district court also instructed the jury, "[m]embers of the jury, don't consider the last remark. Strike it." Id.

The jury convicted Ramseur of the sole count under 18 U.S.C. § 846. In special verdicts, it attributed to Ramseur the maximum amount of crack and cocaine charged by the government, "50 grams or more of a mixture and substance containing a detectable amount of cocaine base" and "5 kilograms or more of a mixture and substance containing a detectable amount of powder cocaine." J.A. 948. However, the jury attributed only the minimum amount of marijuana that they had been asked to find, "less than 50 kilograms." J.A. 949.

4

B.

Prior to Ramseur's sentencing hearing, the United States Probation Office ("Probation") prepared a presentence report, calculating Ramseur's recommended guidelines sentence under U.S.S.G. § 2D1.1. Based on his involvement in the conspiracy, Ramseur's offense level was 36. Probation determined, however, that Ramseur was also directly responsible for three murders and so, under § 2D1.1(d), cross-referenced § 2A1.1 and assigned Ramseur an offense level of 43.[2]

Ramseur filed an objection to the application of § 2D1.1(d). In response, the government sought to establish that Ramseur was responsible for three murders, "during the course of the conspiracy . . . [and] in furtherance of a drug conspiracy." J.A. 963. In so doing, the government again relied predominately on the testimony of cooperating witnesses.

The first murder occurred on May 25, 2001, on Wilson Lee Boulevard (the "Wilson Lee Boulevard" murder). This murder grew out of a theft of drug proceeds by a dealer named Nakia White. Demetrius Thompson, another dealer who did not receive a portion

---

[2] Section 2D1.1(d) provides, "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 . . . [one must] apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate." The base offense level for § 2A1.1 is 43.

5

of the stolen proceeds to which he felt entitled, prevailed upon Ramseur, who was known for possessing a number of firearms and for using violence against rival dealers, to assist in retaliating for the slight. The two knew that White sold crack with Roxanne Eckles out of her apartment, and so went to Roxanne's apartment, along with Eckles-coconspirator O'Kiera Myers, and shot into it, killing John Lewis Davis in the process. A week later, Ramseur returned and fired into the apartment again, but did not manage to harm anyone.

The other murders occurred in November 2004, on Brevard Street (the "Brevard Street" murders). At the time, victims Angelo Stockton and Timothy Cook, rival dealers in Statesville, had been engaged in a longstanding feud with Ramseur and his associates. Because of the feud, gunfire had been exchanged on several occasions. Ramseur's associates had shot at Stockton, Cook, and their associates, and Ramseur had participated in shooting up a house, seeking to kill them. On November 16, 2004, Stockton and Cook encountered several of Ramseur's associates at a drinking establishment, and a fight ensued. In the course of the fight, three of Ramseur's associates, two of whom were named in the Eckles conspiracy, summoned Ramseur because they knew he possessed numerous firearms. Ramseur collected Al Bellamy, an associate and member of the conspiracy, and drove to the drinking establishment, where they encountered

6

Cook and Stockton outside. Ramseur and Bellamy shot and killed both.

At the sentencing hearing, the three associates who summoned Ramseur to Brevard Street testified about the event. Though each had personal knowledge of these murders, two said that they did not know the reason for the underlying feud, and the third said it was "[j]ust some beef about like neighborhoods or something." J.A. 1277. Other cooperators who testified about their knowledge of the murders similarly disclaimed any knowledge of the source of the feud. The government was able to provide an explanation, however, by calling to the stand Tyrone Brandon, who had been convicted of unrelated charges of drug distribution in the Statesville area. Brandon had been incarcerated with Al Bellamy in county prison after the murders occurred, and testified to what Bellamy told him about them:

> Q:  [D]id [Bellamy] tell you what the argument was over?
>
> A:  He told me it was over drugs.
>
> Q:  Did he also tell you that other people thought it was over a girl, but it was really over drugs?
>
> A:  Yes ma'am.
>
> Q:  Did he describe in what way it was over drugs or he just told you it was over drugs?
>
> A:  He said that [Stockton] refused to pay [Cary Phifer] for the drugs that [Cary] had fronted him to sell.

7

J.A. 1413-14.

At the conclusion of the hearing, the district court overruled Ramseur's objection to the application of § 2D1.1(d), finding that Ramseur was "directly accountable" for the Wilson Lee Boulevard and Brevard Street murders. J.A. 1783-84. The district court adopted Probation's recommendation, and sentenced Ramseur to life imprisonment. He now appeals.

## II.

On appeal, Ramseur challenges his conviction and his sentencing. Ramseur contends that the district court should have declared a mistrial after Rickie Eckles referenced a murder charge while testifying about Ramseur's involvement in the drug conspiracy. Ramseur further contends that his sentence should be vacated because the district court erred in finding that the murders of Davis, Cook, and Stockton were "relevant conduct" under U.S.S.G. § 1B1.3, and thus grounds for applying the § 2D1.1(d) sentencing enhancement.[3] We consider these arguments in turn.

---

[3] We are aware that the district court is obligated to consider evidence of relevant conduct under U.S.S.G. § 1B1.3, United States v. Hayes, 322 F.3d 792, 801 (4th Cir. 2003), and that in this case, the district court did not make its determinations explicit. Ramseur, however, does not argue that
(Continued)

8

A.

We first consider Ramseur's challenge to his conviction. Ramseur argues that Eckles's comment was prejudicial to the point that the district court had to dismiss the jury, because the comment informed them of highly damaging information about Ramseur that did not relate to the drug charge for which he was being tried. Because Ramseur did not move for a mistrial below, we review the district court's decision not to declare one sua sponte for plain error. See United States v. Castner, 50 F.3d 1267, 1272 (4th Cir. 1995).

A criminal defendant suffers sufficient prejudice to warrant a new trial if "there is a reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." United States v. Barnes, 747 F.2d

---

the district court failed to consider § 1B1.3. This is probably so because the district court responded to the government's stated intention of proving that the murders were committed "during . . . [and] in furtherance of a drug conspiracy," J.A. 963, by finding that Ramseur was "directly responsible" for the murders, J.A. 1783-84. This finding clearly indicates that the district court found the conduct relevant under § 1B1.3. Accordingly, although it would have been preferable for the district court to make an express finding of relevance, because the record clearly demonstrates considerations relevant to § 1B1.3, we will not find clear error on these facts based on a failure to consider that guideline.

246, 250 (4th Cir. 1984) (internal quotations and citation omitted). In the context of witness testimony, sufficient prejudice does not exist if, despite the testimony, the jury "could make individual guilt determinations by following the court's cautionary instructions." United States v. West, 877 F.2d 281, 288 (4th Cir. 1989), cert denied, 493 U.S. 959 (1989). When considering whether the jury could make individualized determinations by following the court's instructions, several factors are relevant: (1) whether the prosecutor sought to bring out the comment and, if so, whether that was with an improper purpose; (2) whether the district court's instruction sufficiently informed the jury that it could not consider the testimony; (3) whether the jury's verdict fairly implies that it was not influenced by the testimony; and (4) the weight of the evidence. United States v. Dorsey, 45 F.3d 809, 817-18 (4th Cir. 1995).

As a threshold matter, we are unconvinced that Eckles's comment could be considered prejudicial. Eckles stated, "[m]y last time I dealt with him was the time -- if that was the time when the murder charge -- that's the last time." J.A. 187. This comment does not provide any insight into who was charged with a murder. Upon hearing it, all the jury could infer is that Eckles sold drugs to Ramseur until the time that a "murder

10

charge" interrupted their association. This inference, standing alone, is hardly prejudicial to Ramseur.

Furthermore, even if Eckles's comment had the power to prejudice Ramseur, under the Dorsey factors, Ramseur has failed to show that the comment was sufficiently prejudicial to warrant a mistrial. First, as Eckles was responding to defense counsel, there is no evidence here that the prosecutor sought to bring out the comment, which means the prosecutor did not attempt to mislead the jury. Where the prosecutor cannot be held accountable for the comment, we customarily find insufficient prejudice to warrant a mistrial. United States v. Johnson, 610 F.2d 194, 197 (4th Cir. 1979). Second, the district court ably addressed Eckles's comment, giving the jury a firm, immediate instruction that they could not consider it. Third, the jury's verdict demonstrates that the jury was not influenced by Eckles's comment. The jury could have attributed the maximum amount of marijuana to Ramseur but did not, thereby evidencing that it paid attention to the evidence and not the comment. Fourth, the weight of the evidence "clearly establishe[d] all the facts necessary for proof of the illegal conspiracy." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 235 (1940). Notably, Ramseur did not argue that the evidence was insufficient to convict him, thereby conceding that the jury had enough to rely upon in its deliberation.

11

Accordingly, we find that the district court committed no error when it did not order a mistrial.

B.

We turn now to Ramseur's challenges to his sentencing. He argues that the district court erred when enhancing his offense level under U.S.S.G. § 2D1.1(d) because it based the enhancement on murders that were not relevant to his crime of conviction under § 1B1.3. We review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Martinez-Melgar, 591 F.3d 733, 737 (4th Cir. 2010). As Ramseur's arguments concern whether the murders applied under § 2D1.1(d) are relevant conduct within the meaning of § 1B1.3, we begin with a brief discussion of these provisions.

If an individual being sentenced under § 2D1.1 has committed a crime that would constitute murder under 18 U.S.C. § 1111 within federal jurisdiction, the district court may enhance the offense-level calculation under § 2D1.1(d). In order to do so, the district court must determine that the murders are relevant within the meaning of § 1B1.3. The district court first determines the scope of the underlying relevant conduct based on "all acts and omissions committed, aided [and] abetted . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."

12

See § 1B1.3(a)(1)(A), (2).  A murder is then relevant if it occurs during and in furtherance of the crime of conviction, or conduct that is part of a same course of conduct or common scheme or plan as the crime of conviction.  See United States v. Pauley, 289 F.3d 254, 259 (4th Cir. 2002).

When determining if conduct is part of a "common scheme or plan" or of the "same course of conduct," we apply "a fairly straightforward test."  Pauley, 289 F.3d at 259.  We consider:

> such factors as the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern.  The significant elements to be evaluated are similarity, regularity and temporal proximity between the offense of conviction and the uncharged conduct.  Although an appellate court cannot formulate precise recipes or ratios in which these components must exist in order to find conduct relevant, a district court should look for a stronger presence of at least one of the components if one of the components is not present at all.  If the uncharged conduct is both solitary and temporally remote, then there must be a strong showing of substantial similarity.

Id. (quoting United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir. 1992).  With this framework in mind, we consider Ramseur's arguments.

13

We limit our consideration to the Brevard Street murders.[4] Ramseur does not contest that he committed these murders during his crime of conviction. Rather, he contends only that the district court relied on insufficient evidence to find them relevant, because it relied on the statements of Tyrone Brandon, a witness who testified that the murders occurred because Stockton refused to pay Ramseur's associate, Cary Phifer, for drugs Phifer had fronted Stockton. First, Ramseur argues that Brandon was not a credible witness because he was "a felon [who testified] . . . with an expectation of a reduction in sentence," Appellant's Br. at 27, and so could not provide a reliable explanation as to why Ramseur killed Stockton and Cook. Second, Ramseur argues that Brandon's hearsay testimony could not be used to find the murders relevant because other witnesses testified from personal knowledge that the murders were not drug-related.

Ramseur's first argument is a challenge to the district court's credibility determination on Brandon, a kind of determination we can scarcely reverse. As we have said, "when a

---

[4] Section 2D1.1(d) requires only a single murder to support the cross-reference. Accordingly, because we find that the district court did not clearly err in concluding that the Brevard Street murders were relevant conduct, we need not consider the Wilson Lee Boulevard murder.

14

district court's factual finding is based upon assessments of witness credibility, such finding is deserving of the highest degree of appellate deference." United States v. Thompson, 554 F.3d 450, 452 (4th Cir. 2009) (internal quotations omitted). Ramseur provides no compelling reason why we should not apply that level of deference here. Not only is it accepted practice for the government to produce cooperating witnesses at trial -- so much so that § 5K1.1 of the Sentencing Guidelines provides a means to decide how much credit cooperators should receive -- but Ramseur does not even complain about the credibility of the other cooperating witnesses, who all were in the same position as Brandon. Moreover, the district court had the opportunity to hear Brandon's testimony, as well as defense counsel's effort to impeach him on cross-examination. In such circumstances, the district court's credibility determination is not reversible.

Ramseur also fails to show that the district court erred by finding facts based on Brandon's hearsay instead of those witnesses who testified from personal knowledge. At the sentencing stage, the district court is entitled to hear any relevant information, so long as it bears "sufficient indicia of reliability to support its probable accuracy." United States v. Hernandez-Villanueva, 473 F.3d 118, 122 (4th Cir. 2007) (internal quotations and citation omitted). The district court may find hearsay sufficiently reliable, and rely on it to find

15

facts. See United States v. Carter, 300 F.3d 415, 427 (4th Cir. 2002). The hearsay can come from any source, even convicted felons seeking a sentence reduction. See United States v. Johnson, 489 F.3d 794, 797 (7th Cir. 2007) ("[T]he district court may credit testimony that is totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant.") (internal quotations and citations omitted). Here, the differing rationales offered by the witnesses required the district court to resolve a question of fact based on whose testimony ought to be credited, and it was not error for the district court to rely on Brandon in resolving that issue. See Carter, 300 F.3d at 425.

In particular, the district court did not err here because, as Ramseur effectively concedes, it did not have to resolve any real conflicts in the witness testimony. The witnesses who were present on Brevard Street had personal knowledge about the murders, but not the cause of the feud underlying them. Only one actually suggested a rationale different from Brandon's, that the feud was about territory. This explanation, however, could well be construed as drug-related. The district court therefore heard alternative testimony that the source of the feud was unknown, or that it was for a reason that could also be about drugs. Neither explanation logically precludes the

16

finding that drugs were, at minimum, a principal reason underlying the murders.

In this case, the record supports a determination that these murders were committed in furtherance of Ramseur's crime of conviction, and so were relevant within the meaning of § 1B1.3. The district court therefore did not clearly err by enhancing Ramseur's sentence under § 2D1.1(d) on this basis.

## III.

For the foregoing reasons, we affirm Ramseur's conviction and sentence.

AFFIRMED