**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 11-4112**

―――――――――

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

ESTEBAN SALGUERO-ORTIZ, a/k/a Cadejo,

          Defendant - Appellant.


―――――――――

**No. 11-4288**

―――――――――

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

JAMIN OLIVA-MADRID,

          Defendant - Appellant.


―――――――――

Appeals from the United States District Court for the Eastern
District of Virginia, at Alexandria.  James C. Cacheris, Senior
District Judge.  (1:10-cr-00191-JCC-9; 1:10-cr-00191-JCC-6)

―――――――――

Argued:  May 18, 2012          Decided:  June 21, 2012

―――――――――

Before TRAXLER, Chief Judge, and GREGORY and DIAZ, Circuit
Judges.

―――――――――

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** David Benjamin Smith, SMITH & ZIMMERMAN, PLLC, Alexandria, Virginia; Gregory Bruce English, THE ENGLISH LAW FIRM, PLLC, Alexandria, Virginia, for Appellants. Chad Golder, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Karen L. Dunn, Assistant United States Attorney, Courtney Weiner, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jamin Oliva-Madrid ("Oliva") and Esteban Salguero-Ortiz ("Salguero") were convicted and sentenced for conspiracy to distribute cocaine. On appeal, Salguero contends that the evidence supporting his conviction was insufficient, and Oliva and Salguero also challenge their sentences on various grounds. For the reasons that follow, we affirm.

I.

Oliva and Salguero were two of fifteen people indicted in a cocaine distribution scheme that involved importing cocaine from Mexico into Texas and distributing it in Maryland, Northern Virginia, Philadelphia, and elsewhere. Oliva was involved in the conspiracy in Virginia, where he owned a granite business called JD Granite Countertops, Inc. that was used to further the conspiracy. Salguero played a lesser role in the conspiracy in the Philadelphia area.

After a jury trial, both Oliva and Salguero were convicted of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. At sentencing, the district court found Oliva accountable for at least sixty kilograms of cocaine, applied a three-level enhancement for his managerial role in the conspiracy, and imposed a below-guidelines sentence of 188 months' imprisonment. The court

3

found Salguero accountable for fifteen kilograms of cocaine and sentenced him to 151 months' imprisonment, the low end of the advisory sentencing range.

## II.

We begin by addressing Oliva's claim that the district court made two errors at sentencing. Oliva first argues that the district court improperly attributed sixty kilograms of cocaine to him. He also maintains that the district court erred in applying an aggravating role enhancement. We address the drug quantity claim first.

### A.

"We review the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error." United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011) (internal quotation marks omitted). Oliva is in agreement with the government that the evidence at trial proved that Javier Maldonado, a co-conspirator, transported cocaine from Texas to Virginia on ten different occasions. Oliva disputes, however, the average quantity of cocaine that was transported in each trip.

At sentencing, the district court attributed sixty kilograms of cocaine to Oliva, but Oliva contends that he could only be accountable for forty to fifty kilograms of cocaine

4

based on a statement made by Maldonado that, on average, only four to five kilograms were transported in each trip. In another portion of Maldonado's own testimony, however, he stated that the average amount of cocaine transported per trip was "5 kilos, 6 kilos." J.A. 80. Moreover, contrary to Oliva's contention that the maximum amount of cocaine transported in any given trip to Virginia was seven kilograms, there is evidence in the record that ten kilograms of cocaine were transported in a single trip to Virginia. Under these circumstances, we cannot say that the district court committed clear error in attributing sixty kilograms of cocaine to Oliva. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999) ("A district court's approximation of the amount of drugs is not clearly erroneous if supported by competent evidence in the record."); see also United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992) ("Neither the Guidelines nor the courts have required precise calculations of drug quantity.").

In any event, even if the district court's drug quantity calculation was clearly erroneous, the error would be harmless. See United States v. Cabrera-Beltran, 660 F.3d 742, 756 (4th Cir. 2011) (applying harmless error doctrine to drug quantity calculation). Under the assumed error harmlessness inquiry, we consider (1) whether "the district court would have reached the same result even if it had decided the guidelines issue the

5

other way," and (2) whether "the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011) (internal quotation marks omitted). The district court stated in its sentencing order that "even if Defendant were correct regarding drug quantity . . ., this Court would still impose a sentence of 188 months['] imprisonment." J.A. 567D. The court also imposed a below-guidelines sentence to create parity between Oliva's sentence and that of a co-conspirator whom the court believed to be equally as culpable as Oliva. On appeal, Oliva does not challenge the substantive reasonableness of his sentence, and we find that it would be reasonable even accepting Oliva's drug quantity calculation. Therefore, any error in the drug calculation would be harmless. See United States v. Mehta, 594 F.3d 277, 283 (4th Cir. 2010) (noting that "error is harmless if the resulting sentence was not longer than that to which the defendant would otherwise be subject" (alteration and internal quotation marks omitted)).

B.

Oliva also challenges the district court's application of an aggravating role enhancement, which provides, in pertinent part, that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase

6

by 3 levels." U.S.S.G. § 3B1.1(b) (2010). We review this claim for clear error. See United States v. Sheffer, 896 F.2d 842, 846 (4th Cir. 1990).

There is no dispute that this criminal conspiracy was "otherwise extensive." Oliva contends, however, that he was not a "manager or supervisor." We disagree. Oliva recruited his girlfriend, Nuria, to sell cocaine in Manassas, Virginia; he supervised Nuria's activities for a period of time; and he wrote several checks amounting to $57,000 to the leader of the conspiracy, Jorge Gutierrez, in order to pay for cocaine. Given these facts, we find that the district court did not clearly err in applying the sentence enhancement. See U.S.S.G. § 3B1.1 cmt. n.4 (discussing decision-making authority and recruitment of accomplices).

In any event, the district court explained at sentencing that "even if Defendant were correct . . . regarding his role in the offense as being minor relative to his coconspirators, this Court would still impose a sentence of 188 months." J.A. 567D. And we find that the sentence would be reasonable even without application of the enhancement. Therefore, any error in applying the enhancement was harmless. See Savillon-Matute, 636 F.3d at 123-24; Mehta, 594 F.3d at 283.

7

III.

We turn now to Salguero's arguments. Salguero contends that the evidence was insufficient to support his conviction. He also argues that the district court made three errors at sentencing. We begin with Salguero's sufficiency challenge.

A.

Salguero was convicted of conspiracy to distribute five kilograms or more of cocaine. On appeal, he concedes that he was part of the conspiracy but maintains that the evidence was sufficient only to prove the offense of conspiracy to distribute 500 grams or more of cocaine. See United States v. Stewart, 256 F.3d 231, 256 (4th Cir. 2001) (explaining that drug quantity must be found by a jury beyond a reasonable doubt).

"We review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) (internal quotation marks omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

The evidence at trial established that Salguero worked with a co-conspirator named Edin Miguel Esteban-Esteban (a.k.a. "Guero") to accept two deliveries of cocaine. In the first delivery, two other co-conspirators met Salguero and Guero at a store in Philadelphia and removed three kilograms of cocaine from their vehicle while Salguero and Guero stood nearby and observed; and Guero ultimately took possession of the cocaine. In the second delivery, three other co-conspirators, including Maldonado, met Salguero and Guero in Philadelphia and delivered two additional kilograms of cocaine. Maldonado first testified that he gave the two kilograms of cocaine to Salguero, but he later claimed that Guero took possession of the cocaine.

Salguero concedes that he was "linked" to the second delivery of two kilograms of cocaine, but he argues that the first delivery of three kilograms of cocaine cannot be attributed to him because "the first shipment went to Guero alone." App. Brief at 27. We disagree.

Under Pinkerton v. United States, 328 U.S. 640 (1946), "a person [is] liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." United States v. Ashley, 606 F.3d 135, 142-43 (4th Cir. 2010). This extension of liability applies to quantities of drugs within a conspiracy. See United States v. Brooks, 524 F.3d 549, 558 (4th Cir. 2008) ("[A] trial

court is obliged to instruct a jury to use <u>Pinkerton</u> principles to determine the quantity of drugs attributable to each individual defendant involved in a drug conspiracy." (internal quotation marks omitted)). There can be no dispute that the three kilograms of cocaine in the first delivery were transferred to Salguero and Guero in furtherance of the conspiracy. Moreover, Salguero was present for the delivery of the three kilograms, and according to Maldonado's testimony, Salguero worked with Guero. These facts alone would enable a reasonable juror to find Salguero liable for the distribution of all five kilograms of cocaine. In addition, the government introduced audio recordings of Salguero arranging for the shipment of another ten kilograms of cocaine and seeking to purchase yet another kilogram of cocaine. Thus, there is substantial evidence in the record to support his conviction.

B.

We turn finally to Salguero's three challenges to his sentence.

1.

Salguero first claims that the district court erred in attributing at least fifteen but less than fifty kilograms of cocaine to him for sentencing purposes. We review this claim for clear error. See <u>Slade</u>, 631 F.3d at 188. "[T]he district court may attribute to the defendant the total amount of drugs

10

involved in the conspiracy, provided the drug quantities were reasonably foreseeable to the defendant and are within the scope of the conspiratorial agreement." Randall, 171 F.3d at 210. We find that the five kilograms of cocaine delivered in Philadelphia, the ten kilograms of cocaine to be shipped, and the one additional kilogram of cocaine to be purchased—amounting to sixteen kilograms of cocaine—were reasonably foreseeable to Salguero and within the scope of his conspiratorial agreement. Therefore, the district court did not clearly err in attributing at least fifteen kilograms of cocaine to Salguero for sentencing purposes.

2.

Salguero next contends that the district court should have, sua sponte, raised the issue of whether his deportable status justified a downward variance from the guidelines. He argues that because of his deportable status, he will be ineligible for the benefits of 18 U.S.C. § 3624(c) and will, therefore, be subjected to harsher conditions than will an otherwise identical citizen.[*] While we have implicitly concluded that district

---

[*] 18 U.S.C. § 3624(a)(1) provides that "[t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."

11

courts have the discretion to impose below-guidelines sentences for this reason, see United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995), we have never suggested that district courts are required to do so. Moreover, the cases relied upon by Salguero speak in discretionary, rather than obligatory, terms. See United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997) (concluding that "[t]he district court is thus free to consider" a defendant's alien status (emphasis added)); United States v. Smith, 27 F.3d 649, 650 (D.C. Cir. 1994) (considering "whether a sentencing court may depart" and "hold[ing] such departures permissible" (emphasis added)). Accordingly, the district court did not err by failing to raise this issue sua sponte.

3.

Finally, Salguero argues that the district court committed procedural error by failing to provide an individualized sentence. During his sentencing hearing, Salguero emphasized that he was a good man, was a hard worker who provided for his family, had no criminal history, and was deportable. Without explaining how the sentencing factors enumerated at 18 U.S.C. § 3553(a) applied to these personal circumstances, the district court stated, "I think considering the 18 U.S.C. 3553 factors[, the guidelines] range is appropriate." J.A. 531. The court then imposed a bottom-of-the-guidelines sentence.

12

On appeal, the government concedes that the district court committed procedural error but argues that the error was harmless. Although we are not bound by the government's concession of error, see United States v. Rodriguez, 433 F.3d 411, 414 n.6 (4th Cir. 2006), we agree with the government that any error was harmless.

Salguero's arguments were relatively weak and provided no concrete basis for distinguishing him from the many other first-time offenders who support their families. The district court listened to Salguero's statements and arguments and, shortly thereafter, asserted that it had arrived at the sentence by considering the relevant factors. Thus, "we can say with fair assurance that the district court's explicit consideration of [Salguero's] arguments would not have affected the sentence imposed." United States v. Boulware, 604 F.3d 832, 838 (4th Cir. 2010) (alterations and internal quotation marks omitted); cf. United States v. Lynn, 592 F.3d 572, 585 (4th Cir. 2010) (vacating and remanding for resentencing based on "the strength of Lynn's arguments for a different sentence," which were not explicitly considered). Accordingly, we find that any procedural sentencing error was harmless.

IV.

For the foregoing reasons, Salguero's conviction and sentence are affirmed and Oliva's sentence is also affirmed.

AFFIRMED