**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4619

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

MICHAEL LAWRENCE KERLIN,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Roderick Charles Young, District Judge. (4:19−cr−00007−RCY−LRL−1)

Submitted: October 5, 2022                    Decided: February 15, 2023

Before DIAZ, and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Mirriam Z. Seddiq, SEDDIQ LAW FIRM, Rockville, Maryland; David B. Benowitz, PRICE BENOWITZ, LLP, Washington, D.C., for Appellant. Jessica D. Aber, United States Attorney, Richard D. Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Lawrence Kerlin appeals the 204-month prison sentence imposed by the district court after he pleaded guilty to several drug-related charges. Kerlin challenges the application of a second-degree murder cross-reference, the district court's calculation of attributable drug quantities, and the substantive reasonableness of his sentence. Finding no reversible error, we affirm.

I.

A.

This case stems from the deaths of two women after taking heroin Kerlin supplied. In November 2015, Kerlin called 911 to report that he had found Wendy Hinkle unconscious after she snorted heroin at his residence. Hinkle died a few days later.

Six months later, officers discovered Michelle Hull's body in a trash can behind Dixie Fuel, a gas station Kerlin owned. Her body was folded in half with her arms and feet touching. Officers searched Kerlin's house and found Hull's car, purse, and phone.

A medical examiner couldn't conclusively determine the cause and manner of Hull's death. Tests found multiple "illicit and licit drugs," including cocaine and heroin, in Hull's blood. J.A. 302. But the autopsy report also noted that Hull had "multiple blunt force head injuries," and that she may have suffocated because of her folded position in the trash can. *Id*. The examiner also found several "natural patholog[ies]" that could have contributed to her death, including "an enlarged heart" and mild arterial and cerebral plaque

buildup. *Id*; *see also* J.A. 207–13. Hull's friends told officers that she used cocaine but didn't use heroin.

One of Kerlin's employees at Dixie Fuel told investigators that she had called Kerlin after learning Hull was missing, and that Kerlin told her Hull had overdosed and died and was at the gas station. The employee said Kerlin asked her for help moving Hull's car from his garage back to Hull's house.

An inmate who was housed with Kerlin at a Virginia jail told officers that Kerlin admitted he had shot up Hull with heroin, she overdosed, and he didn't call for help because he was afraid he would be charged with murder. Kerlin admitted as part of his plea agreement that he distributed heroin to Hinkle and Hull before their deaths.

## B.

A grand jury in the Eastern District of Virginia indicted Kerlin on nineteen counts related to drug trafficking and distribution. Kerlin pleaded guilty to four counts: one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(2); two counts of distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of possessing a firearm as an unlawful user of controlled substances in violation of 18 U.S.C. § 922(g)(3).

The probation officer computed the advisory sentencing guideline range for the counts related to heroin distribution. Applying the second-degree murder cross-reference in U.S.S.G. § 2D1.1(d)(1) because of Hull's death, the base offense level was 38 under § 2A1.2(a). The officer recommended subtracting three levels because Kerlin accepted responsibility for the offenses, resulting in a total offense level of 35. Because the murder

3

cross-reference dictated the offense level, the officer didn't calculate an offense level based on the drug quantities attributable to Kerlin.[1]

At sentencing, the court heard testimony from the medical examiner who conducted Hull's autopsy. The medical examiner reiterated that she was "unable to determine why [Hull] died." J.A. 200. But she noted that if Hull was not already dead when she was placed in the trash can, "positional asphyxia" would have played "a significant role" in her death. J.A. 203. And she said that while the drugs Hull had taken "may have caused the death," "there were other factors, including the circumstances and natural disease and some of the injuries that just made [her] not think that this was just a typical drug overdose." J.A. 207.

Kerlin objected to the application of the second-degree murder cross-reference, arguing the medical examiner's testimony wasn't enough to prove by a preponderance of the evidence that Kerlin caused Hull's death. J.A. 236–40. The court disagreed, finding:

> [W]hether it's the drug overdose by itself, the positional asphyxia by itself, or a combination or both of those things, there is one thing that I think we all know that has been uncontroverted, and that is both of those things point back to Michael Kerlin, and they point back to Michael Kerlin in a way that was reckless, that was wanton, and that there was not a standard of care given, because there was no call to 911 for anyone to try to help.

---

[1] Namely, "one table[t] of Alprazolam, a schedule IV substance, 3.54 grams of 'crack' cocaine, 1,006.425 grams of powder cocaine, and 2,698 grams of heroin." J.A. 343.

J.A. 257. Even if the medical examiner couldn't "say exactly how Ms. Hull passed away," the court determined, there was sufficient evidence to apply the murder cross–reference. J.A. 256–57.

The court adopted the presentencing report's finding that the offense level was 35, yielding a sentencing-guideline range of 168 to 210 months. The court then sentenced Kerlin to 204 months in prison and three years of supervised release.

This appeal followed.

## II.

"We review the sentence imposed by a district court under a deferential abuse-of-discretion standard." *United States v. Davis*, 679 F.3d 177, 182 (4th Cir. 2012) (cleaned up). We review factual findings for clear error and legal conclusions de novo. *Id*. Under the clear error standard, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Shea*, 989 F.3d 271, 280 (4th Cir. 2021).

## A.

We begin with Kerlin's argument that the second-degree murder cross-reference was improper because the government failed to prove he caused Hull's death.

The government has the burden to prove a cross-referenced offense by a preponderance of the evidence. *Davis*, 679 F.3d at 182. Second-degree murder, the cross-referenced offense here, "is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a).

5

Kerlin doesn't dispute that the government established malice aforethought. But he argues that the government failed to prove causation—that is, "that acts or omissions of Mr. Kerlin were the cause of [Hull's] death." Appellant's Br. at 25. He argues that the medical examiner didn't conclusively determine a cause of death, so Hull's "enlarged [heart], hardening of arteries, and various licit [] drugs" are all plausible causes of her death. *Id*. at 26.

The government replies that "the medical evidence supported three possible causes of death": the drugs Kerlin supplied, suffocation in the trash can, and Hull's underlying health conditions. Appellee's Br. at 14–15. The court didn't clearly err, the government contends, in finding it more likely than not that natural causes weren't to blame. *Id*. at 15. Giving due deference to the district court's factual findings, we agree with the government.

The parties agree that but-for causation would satisfy the causation requirement. *Cf. Burrage v. United States*, 571 U.S. 204, 218–19 (2014). So Kerlin must show that the district court clearly erred in finding, by a preponderance of the evidence, that Hull would have lived but for Kerlin's supplying her heroin, failing to call for help, or putting her body in the trash can.

6

But sufficient evidence supports the district court's conclusion.  The court found that Hull was not a habitual heroin user and that Kerlin gave her heroin.  It also found, per the jailhouse informant, that Hull died after taking the heroin and Kerlin didn't call 911.[2]

If Kerlin put Hull in the trash can before she died, moreover, the medical examiner's testimony supports the theory that positional asphyxia was more likely than not a but-for cause.  None of these findings are clearly erroneous.  So the court didn't "create[] out of whole cloth the cause of the death."  Appellant's Br. at 29.  Rather, it examined the evidence and found it more likely than not that at least one of Kerlin's actions was a but-for cause of Hull's death.

We conclude that the district court didn't clearly err in applying the second-degree murder cross-reference.

B.

Next, Kerlin argues that the district court erred in calculating the relevant drug quantities attributable to him.  Even assuming error, in evaluating such claims we must consider whether the error was harmless—that is, whether the defendant "received the same sentence that he would have received" without the error. *United States v. Mehta*, 594 F.3d 277, 283–84 (4th Cir. 2010).

---

[2] Given that Hull's body had no signs of needle punctures, the district court's finding that the heroin "was injected in her by the defendant"—relying on the jailhouse informant—may be error.  J.A. 256–57.  But the method of administration doesn't change the result.

Here, the second-degree murder cross-reference alone determined the offense level. While the drug quantities would have established a base offense level of 30, the cross-reference yielded a base offense level of 38. So as the district court noted, "the higher guideline comes into effect, and the drug guideline does not come into effect." J.A. 257. Accordingly, any error in calculating the drug quantities is harmless.

C.

Finally, Kerlin argues that his sentence was substantively unreasonable because the district court "erroneously applied the murder cross-reference and miscalculated the drug weights." Appellant's Br. at 39–40. But as discussed, the district court didn't commit reversible error on either front. Kerlin therefore hasn't overcome the presumption of substantive reasonableness we afford his within-Guidelines sentence. *See Rita v. United States*, 551 U.S. 338, 347 (2007).

III.

We affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*